**DREIS & KRUMP MANUFACTURING COMPANY,**
Plaintiff-Counterdefendant-Appellant-Cross-Appellee,

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT NO. 8,** Defendant-Counterplaintiff-Appellee-Cross-Appellant.

Nos. 85–3136, and 85–3155.

United States Court of Appeals,
Seventh Circuit.

Argued June 13, 1986.

Decided Sept. 22, 1986.

John A. McDonald, Keck Mahin & Cate, Chicago, Ill., for Dreis & Krump.

David Mathews, Carmel Charone Widmer & Mathews, Chicago, Ill., for Intern. Assoc. of Machinists.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and GORDON, Senior District Judge.*

POSNER, Circuit Judge.

Dreis & Krump, a manufacturer of industrial equipment, appeals from a judgment dismissing on summary judgment its suit (brought under section 301 of the Taft-Hartley Act, 29 U.S.C. § 185) to set aside an arbitrator's award to the machinists union. The union cross-appeals from the court's refusal to award it attorney's fees under Fed.R.Civ.P. 11, and also requests attorney's fees for defending the appeal.

The company and the union were the parties to a collective bargaining agreement, dated October 1, 1981, which contained a provision for arbitration of disputes arising under the agreement. The company had financial problems and in 1982 laid off a welder named Larry Crawford. A few months later the company decided as a cost-saving measure that rather than recall Crawford it would subcontract the welding work that he had been doing. In March 1983 the union filed a grievance on Crawford's behalf. The grievance was referred to an arbitrator, who on April 30, 1984, found that the subcontracting of Crawford's work was a breach of the collective bargaining agreement. The arbitrator ordered the company to stop subcontracting welding as long as its welders were laid off, to recall Crawford, and to make him whole for the wages and benefits that he had lost as a result of

the breach, "the amount thereof to be determined by the parties after a joint review of Company records." The order provided that "the Arbitrator will retain jurisdiction for 90 days to resolve any remaining or unforeseen issues as to relief." The company did not comply with the arbitrator's order. Instead, on June 11, 1984, it asked the arbitrator to reconsider the order; this request was denied on September 5. After the union refused to accept the company's tender of seven weeks' backpay to Crawford, the company filed this suit on February 8, 1985.

The timetable suggests something profoundly wrong about this litigation. Labor arbitration is supposed to be a speedy and efficacious remedy for disputes arising out of the administration of collective bargaining agreements. Yet almost three and a half years have passed since the union filed its grievance on behalf of Crawford, and the grievance is still unresolved. It should have been resolved more than two years ago, when the arbitrator issued his decision. The company had no ground for challenging the decision in court; also, it filed this suit after the statute of limitations had run.

■ The statute of limitations that applies to a suit brought in Illinois under section 301 of the Taft-Hartley Act to set aside an arbitrator's award is 90 days. *Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266 (7th Cir.1985). The present suit was filed nine months after the arbitrator made his award. The company argues that the statute did not begin to run till the ninety-first day after the award, because the arbitrator expressly reserved jurisdiction till then, and in any event was tolled while the company's request for reconsideration was under advisement. Even if these arguments are correct, they do not bring the suit within the 90-day limit. The company's request for reconsideration was

---

* Hon. Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, sitting by designation.

turned down on September 5, 1984, yet it did not file this suit till February 8, five months later. The only way the suit could be timely would be if the company's further argument, that when the arbitrator denied the request for reconsideration he implicitly reserved jurisdiction for another 90 days, were accepted; but it is an absurd argument.

■ There is more wrong with the company's position on timeliness than arithmetic. A reservation of jurisdiction—which is implicit in any order that grants equitable relief (as this one did, in ordering Dreis & Krump to recall Crawford and stop subcontracting), but not in an order that merely refuses to reconsider a previous order—would not extend the time for appeal. See *University Life Ins. Co. v. Unimarc Ltd.*, 699 F.2d 846, 849–50 (7th Cir. 1983); 9 Moore's Federal Practice ¶ 110.-08[1] at p. 118 (1985). And while a suit to set aside an arbitrator's award is not an appeal, it is like an appeal; that is one reason for the very short statute of limitations for bringing such suits. Therefore the arbitrator's reservation of jurisdiction for 90 days—not to mention any supposed implicit reservation for another 90 days after the arbitrator denied the request to reconsider his award—did not suspend the statute of limitations for filing suit to set aside the award.

It is not even clear that the company's request for reconsideration suspended the statute of limitations. Continuing with the analogy to an appeal, we point out that Rule 4(a)(4) of the Federal Rules of Appellate Procedure delays the time for appealing if the appellant files a motion to reconsider (see Fed.R.Civ.P. 59(e)) within 10 days after judgment was rendered. There is no counterpart provision for arbitral proceedings. Although section 9 of the Uniform Arbitration Act, Ill.Rev.Stat. ch. 10, ¶ 109, allows 20 days to file a request with the arbitrator to change an award, the grounds are limited to clerical and other formal errors in the award. Compare ¶ 109 with ¶ 113(a)(1) and (3). And the idea that an arbitrator might have an inherent power to

modify his award is made problematic by the ad hoc status of most arbitrators, compared to courts and administrative agencies. See Elkouri & Elkouri, How Arbitration Works 283–85 (4th ed. 1985). The arbitrator renders his award, then quits. What power can he retain to reconsider his award after quitting? If a judge resigns his office, he can't be asked to reconsider his rulings. A further point is that if the parties to arbitration can badger the arbitrator to reconsider his award for some indefinite time after he has made it, the speed and finality of arbitration are impaired.

Yet where as in the present case the arbitrator does not quit immediately but retains jurisdiction to make sure his award is complied with, maybe this empowers him to consider requests for reconsideration filed before he does quit. If so, a request filed within that period would be timely. By this reasoning the company's request in this case, which was filed 42 days after the award was rendered, was timely. But the premise that the arbitrator could by retaining jurisdiction act on requests for reconsideration is not secure, especially where as in the present case the arbitrator retained jurisdiction for the limited purpose of supervising relief—not of entertaining requests to reconsider his determination of liability. And even if he could act on such a request, it would not follow that the statute of limitations was tolled while the request was under advisement. Requests for reconsideration under Fed.R.Civ.P. 60(b) do not toll the period for appeal; why should a request for reconsideration of an arbitrator's award toll the period for seeking judicial review of the award? But cf. *Arch Mineral Corp. v. Director, Office of Workers' Compensation Programs*, 798 F.2d 215, 216–20 (7th Cir.1986). And even putting all these doubts to one side, the suit was still untimely; it wasn't filed till five months after the request for reconsideration was denied.

■ The only thing that could save the timeliness of the suit would be if the arbitrator's reservation of jurisdiction had

somehow deprived the award of its finality. Again by analogy to appeals, the party who has lost the arbitration should not be required, and perhaps not permitted either, to bring suit to set aside the award until the award is in some sense final, definitive; until it becomes such, the "loser" really hasn't been hurt and his quarrel with the arbitrator is undefined. There are two reasons, however, why this argument must be rejected in the setting of the present case. First, all that was in doubt was the precise amount of backpay, for which the company's records had to be consulted but which once they were consulted would be determined automatically, without an exercise of judgment or discretion. This was, therefore, a "ministerial" detail, such as would not have prevented the judgment from being deemed final for purposes of appeal, *Love v. Pullman Co.*, 569 F.2d 1074, 1076 (10th Cir.1978); see *Parks v. Pavkovic*, 753 F.2d 1397, 1401–02 (7th Cir.1985); no more did it prevent the award from becoming final for purposes of starting the statute of limitations running. Second, and more interesting, the analogy between a suit to set aside an arbitration award and an appeal from a regular judgment is just an analogy, and not an identity, and it breaks down on the issue of finality. A suit to set aside an arbitration award under section 301 of the Taft-Hartley Act is a suit for breach of contract, the contract being the arbitration clause of the collective bargaining agreement; and the suit is ripe as soon as the breach is definitive. Quite apart from the details of backpay, the rendition of an award which if the company is correct ordered it to do things (namely stop subcontracting and reinstate Crawford) that were in excess of the arbitrator's authority to order was a breach of contract that set the statute of limitations running.

■ The company argues that we should not apply the *Domas* decision (holding that 90 days is the statute of limitations in suits in Illinois under section 301 to set aside an arbitrator's award) retroactively. But as the decision was clearly foreshadowed by our decision in *Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1026–27 (7th Cir.1980), we reject the argument. True, in *Jefferson* we were borrowing from an Indiana statute which, unlike the Illinois statute involved in *Domas* and this case (see Ill.Rev.Stat. ch. 10, ¶¶ 112(b), (e)), did not except labor arbitrators' awards from the 90–day period for suits to set aside arbitrators' awards. But Dreis & Krump could not reasonably have believed that such an exception would control in a suit under section 301. The process of borrowing a state statute of limitations for use in a federal suit for which federal law has provided no statute of limitations involves finding the closest counterpart in state law to the federal cause of action, and the closest counterpart in Illinois law to a suit to set aside a labor arbitrator's award is a suit to set aside another kind of arbitrator's award. The fact that Illinois may have decided not to apply portions of its arbitration statute to labor arbitration may signify nothing more than that suits to enforce labor arbitration under Illinois law are unimportant because of the preemptive effect of section 301.

A 90–day deadline is certainly reasonable. Since as we said a suit to set aside an arbitration award is analogous to an appeal, the appropriate statute of limitations is one closer to the time for taking an appeal (30 or 60 days in the federal system, see Fed.R.App.P. 4(a)) than to the time for filing an ordinary lawsuit. To file an ordinary suit one must investigate facts; to file a suit to set aside an arbitrator's award all one must do is read the arbitrator's opinion and decide whether there is a legal ground for challenging it. Moreover, all the company argues is that it thought it had six months to file such a suit, and since it took nine months, the argument has rather a hollow ring.

■ Ordinarily we would stop, having found one ground on which the company must lose this appeal. But since we must decide the cross-appeal, which seeks attorney's fees for the bringing of a frivolous suit, we shall go on and consider the two other grounds on which the company must

lose. The first is that by consenting to submit the grievance to arbitration without any reservations, the company waived the argument that is the premise of its suit—that the arbitrator acted outside of his jurisdiction. The company's argument on the merits is that the management-rights clause in the collective bargaining agreement is so broad that it makes a decision to subcontract work nonarbitrable. But if this is so the company should either have refused to arbitrate the dispute, thus forcing the union to bring a suit to compel arbitration—a suit in which the district court would decide the issue of arbitrability—or have submitted to arbitration under protest. By failing to do either of these things it admitted that the subject of subcontracting was within the scope of the clause. See *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union*, 760 F.2d 173, 175–76 (7th Cir.1985), and cases cited there; *Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 43 (3d Cir.1985).

 In any event the management-rights clause does not so clearly withdraw the subject of subcontracting from the scope of the arbitration clause as to deprive the arbitrator of jurisdiction. See *Edward Hines Lumber Co. v. Lumber & Sawmill Workers Local No. 2588*, 764 F.2d 631 (9th Cir.1985); *Mobil Oil Corp. v. Local 8–766, Oil, Chemical & Atomic Workers Int'l Union*, 600 F.2d 322, 328 (1st Cir.1979); *International Union, United Automobile Workers of America, Local 391 v. Webster Electric Co.*, 299 F.2d 195, 197 (7th Cir. 1962). The management-rights provision is indeed broad; section 2.2 of the collective bargaining contract provides:

*Section 2.2 Management Rights*

(A) The Company retains the exclusive right to manage its business and plant, to direct its working force and to exercise all the functions and prerogatives of management in the operation of its business, in such manner as it deems advisable without being restricted or limited in any respect, subject only to the conditions expressly contained in this agreement.

(B) The management of the Company and the direction of its working force, reserved exclusively to the Company, includes, but is not limited to, the right to suspend or discharge for proper cause and to transfer employees, to lay off employees because of lack of work or for any other legitimate reasons, to determine the days (including Saturdays and Sundays) and hours of work and the extent to which the plant shall be operated and to adopt such rules and regulations and to institute such methods as the Company from time to time may deem necessary for the conduct of its business; including timestudies, standards control and modern management methods, except that no piece work, bonuses or premium system shall be introduced unless the terms thereof shall be agreed upon by the Company and the Union.

Read literally and by itself this language is certainly broad enough to make subcontracting a prerogative of management, yet really it does no more than spell out the implications of the contractual provision held insufficient in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960), to bar arbitration of a dispute over subcontracting—the provision that "matters which are strictly a function of management shall not be subject to arbitration." And the clause must not be read in isolation from the rest of the agreement, the main purpose of which is to fix wages and benefits for the workers and give them job security in accordance with their relative seniority, in exchange for their promise not to strike. If the company encounters hard times it can lay off unneeded workers, in reverse order of seniority; but, equally, if it has work it can't terminate workers without cause and replace them with other workers to whom it pays lower wages. One method of avoiding the central obligations of the agreement would be to lay off workers and subcontract their work to persons who would perform the identical work and on company premises but be paid less for it.

See *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 214, 85 S.Ct. 398, 404, 13 L.Ed.2d 233 (1964). At argument the company's counsel conceded that such subcontracting would violate the contract even though within the literal terms of the management-rights provision. When asked what provision forbade such subcontracting he said there was no specific provision but that the agreement implicitly forbids measures inconsistent with its central purposes. In other words, the agreement contains implied as well as express terms, see *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 185–86 (7th Cir. 1985); *Desert Palace, Inc. v. Local Joint Executive Bd.*, 679 F.2d 789, 793 (9th Cir. 1982), and the implied terms may require that the management-rights provision be given a narrower scope than its language might suggest. An arbitrator is not obliged to read a contract literally. *Ethyl Corp. v. United Steelworkers of America*, *supra*, 768 F.2d at 186.

■ The company thus concedes that promiscuous subcontracting would violate the implied terms of the agreement notwithstanding the broad provision on management prerogatives, and this concession sinks its argument that the provision deprived the arbitrator of jurisdiction to consider whether the company's subcontracting of work when it had workers on layoff who do the identical work (namely, welding) violated the collective bargaining agreement. All the company is left with is a disagreement with the arbitrator over the precise meaning of the agreement in the circumstances of the present case, where the layoffs were made at a time when the company was experiencing financial difficulties and the union had not objected to earlier instances of subcontracting, though none had caused or perpetuated layoffs. But an arbitrator's award cannot be set aside just because the arbitrator may have interpreted the collective bargaining agreement incorrectly. "The judiciary has no power to reach and determine the merits of arbitration awards merely because of disagreement, even strong disagreement, with the arbitrator's interpretation of the con-

tract. As here, so long as the arbitrator interpreted the contract in making his award, his award must be affirmed even if he clearly misinterpreted the contract." *E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Ass'n of East Chicago, Inc.*, 790 F.2d 611, 614 (7th Cir. 1986). Once the dispute is shown to be within the scope of the arbitration clause, the only question for the court is whether the arbitrator was interpreting the collective bargaining agreement; only if he was not interpreting it, but instead was applying his own ideas of what was fair and equitable, as in *Ford Motor Co. v. Plant Protection Ass'n Nat'l*, 770 F.2d 69, 75–76 (6th Cir.1985), can the court vacate the award. See *E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Ass'n of East Chicago, Inc.*, *supra*, 790 F.2d at 614; *Ethyl Corp. v. United Steelworkers of America*, *supra*, 768 F.2d at 184–85.

■ The arbitrator's 35-page opinion makes clear that the task he set himself was to interpret the collective bargaining agreement. Referring to the company's argument that the management-rights provision "negates any implied prohibition on subcontracting" (a position abandoned in this court, as we noted), the arbitrator said (footnotes omitted):

This position of the Company is untenable. It has been rejected by most arbitrators who hold that as a general rule an employer does not have an unqualified right to subcontract bargaining unit work to outsiders. This position is based on the theory that a collective bargaining relationship impliedly imposes an obligation on management to not enter upon a unilateral course of conduct, the effect of which would render the contractually protected scope of the bargaining unit null and void.... The cases are legion in which arbitrators have implied limits on subcontracting from the recognition, seniority, wage and other contract clauses similar to those found here. The essence of these cases is that the employer must act reasonably and in good faith in

exercising its right to subcontract. Whether it has acted in such manner must be measured in the context of the facts and circumstances of each case. In applying the subjective standard of reasonableness, arbitrators have been guided by various objective measures such as:

1. Past subcontracting practices; who normally performed the work;

2. Whether there were sound business reasons for subcontracting ...;

3. The effect on the bargaining unit; whether there is anti-union animus or deliberate undermining of the Union;

4. The effect on members of the bargaining unit in terms of job opportunities, layoffs or overtime;

5. Whether the work is subcontracted regularly or intermittently or for long, short or indefinite periods of time;

6. The history, if any, of negotiations regarding subcontracting.

Having set forth the test, the arbitrator proceeded to apply it to the company's conduct in this case.

The test is a test for determining the meaning of the collective bargaining agreement. The fact that it looks to practices and consequences does not deprive it of genuineness as a test of contractual meaning, for practices and consequences are frequently consulted in determining the meaning of a contract; a recent example is *Northern Indiana Public Service Co. v. Carbon County Coal Co.*, 799 F.2d 265, 274–76 (7th Cir.1986). The test is based on the proposition conceded by the company that an employer cannot use subcontracting to nullify the collective bargaining agreement, merely because the management-rights clause is broad enough to allow this if read literally. No doubt the clause allows most subcontracting; but it does not allow the company to use subcontracting to unravel the basic protections that the collective bargaining agreement grants its employees. If the company wanted an unlimited right of subcontracting it should have written it into the management-rights clause or created an express exception to the arbitration clause, as in the agreement involved in *Local 13, Int'l Federation of Professional & Technical Engineers v. General Electric Co.*, 531 F.2d 1178, 1180 (3d Cir.1976).

The present case is thus covered by the following observation in our *Ethyl* opinion (rendered before the appeal in this case) (768 F.2d at 187):

we want to make clear that we take seriously the twin propositions that (1) the reviewing court's function (whether the district court's, or this court's) is at an end when it concludes that what the arbitrator did was interpretation of the contract, and (2) when in doubt the court must find that it was interpretation. We do not want to be plagued by cases in which companies or unions refuse to comply with arbitration awards merely because they think the arbitrator clearly misinterpreted the collective bargaining agreement. If parties to collective bargaining contracts are unhappy with arbitration awards they can bargain for a different method of selecting arbitrators, or for panels of arbitrators, trial or appellate.

We have gone on at such length not because the question of the validity of the arbitrator's award is difficult but to make clear that the company's attack on the award was frivolous, thus entitling the union to attorney's fees both in the district court and in this court. The company should have realized that its suit was barred by the statute of limitations, barred by its having submitted to arbitration without any reservations, and barred by the arbitrator's opinion which made clear that he was interpreting the collective bargaining agreement—whether correctly or not could make no difference in court. In *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159, 1167–68 (7th Cir.1984), decided before Dreis & Krump filed the present suit, we indicated that we would award attorney's fees against parties that challenge arbitration awards without basis and we noted that attorney's fees had in the past been award-

ed more freely in such cases than in other cases of groundless litigation. See also *Teamsters Local Union No. 764 v. J.H. Merritt & Co., supra,* 770 F.2d at 43 n. 2. The suit in *Miller* had been filed before the effective date of the amended Rule 11 of the Federal Rules of Civil Procedure; this suit was filed after. The amended rule provides for sanctions (including reasonable attorney's fees) against pleadings that do not reflect the signing attorney's "belief formed after reasonable inquiry [that the pleading] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Although the union moved for an award of attorney's fees under Rule 11, the district judge denied the motion without explanation. This was an abuse of discretion. No competent attorney who made a reasonable inquiry into the state of the law when this suit was filed in February 1985 could have thought the suit had any possible merit. He should have known it was time-barred and in any event did not come within the limited scope of suits to set aside a labor arbitrator's award. Although we have no reason to believe that the company or its counsel was acting in bad faith, the test under Rule 11 is an objective one, *Brown v. Federation of State Medical Bds.,* 800 F.2d 168, 171–72 (7th Cir.1986); *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986); *Indianapolis Colts v. Mayor & City Council,* 775 F.2d 177, 181 (7th Cir.1985); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985); Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 191 (1985), and is flunked here. The union is equally entitled to its attorney's fees on this appeal; the company's briefs and oral argument failed to identify any arguable error in the district court's decision. Fed.R. App.P. 38, which authorizes the award to the appellee of "just damages and single or double costs" for a frivolous appeal, has been read to allow the award of attorney's fees. See, e.g., Note of Advisory Comm. on Rule 38; *Indianapolis Colts v. Mayor & City Council, supra,* 775 F.2d at 184.

After all, they are normally and here the principal item of damage to the appellee.

■ Obviously the people who run Dreis & Krump feel strongly that the subcontracting of Crawford's work did not violate the collective bargaining contract. It is human nature to crave vindication of a passionately held position even if the position lacks an objectively reasonable basis in the law. But the amended Rule 11 makes clear that he who seeks vindication in such circumstances and fails to get it must pay his opponent's reasonable attorney's fees. A company dissatisfied with the decisions of labor arbitrators need not include an arbitration clause in its collective bargaining contracts, but having agreed to include such a clause it will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals. For such conduct the law authorizes sanctions that this court will not hesitate to impose. *In re TCI Ltd.,* 769 F.2d 441, 445–46 (7th Cir.1985).

■ Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. The rules, whether statutory or judge-made, designed to discourage groundless litigation are being and will continue to be enforced in this circuit to the hilt—as a recital of opinions published by this court since the first of the year imposing sanctions for groundless litigation should make clear. See *Bacon v. American Federation of State, County & Municipal Employees Council, # 13,* 795 F.2d 33 (7th Cir.1986); *Granado v. Commissioner,* 792 F.2d 91, 94 (7th Cir.1986) (per curiam); *Coleman v. Commissioner,* 791 F.2d 68 (7th Cir.1986); *Spiegel v. Continental Ill. Nat'l Bank,* 790 F.2d 638, 650–51 (7th Cir.1986); *Thornton v. Wahl,* 787 F.2d 1151 (7th Cir.1986); *Cannon v. Loyola University,* 784 F.2d 777, 782 (7th Cir.1986); *Wisconsin v. Glick,*

782 F.2d 670 (7th Cir.1986). Lawyers practicing in the Seventh Circuit, take heed!

The judgment dismissing the company's suit is affirmed, but the dismissal of the union's motion for attorney's fees is reversed and the case is remanded for an award of the attorney's fees reasonably incurred by the union both in the district court and in this court.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.