INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION NO. 371, Plaintiff–Appellant,

v.

LOGISTICS SUPPORT GROUP, Defendant–Appellee.

No. 92–2055.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1993.

Decided July 9, 1993.

Michael W. O'Hara (argued), Cavanagh & O'Hara, Springfield, IL, David Stuckel, Har-

vey & Stuckel, Peoria, IL, for plaintiff-appellant.

Arthur W. Eggers (argued), James S. Zmuda, Califf & Harper, Moline, IL, for defendant-appellee.

Before CUDAHY, COFFEY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

A Teamsters local (the Union) brought this suit pursuant to § 301 of the Taft-Hartley Act, 29 U.S.C. § 185, alleging that Logistics Support Group (the Company) breached the parties' collective bargaining agreement.[1] Specifically, the Union charged that the Company refused to submit a dispute to arbitration as the agreement required. The district court granted the Company's motion to dismiss for failure to state a claim upon which relief could be granted. The Union appeals and we affirm.

The Company fired Charles Stuebe in November 1990, apparently because he "miscoded," i.e., falsified, one of his time cards. The Union filed a grievance on his behalf, and the Company promptly denied it.[2] Stuebe wished to "appeal" the denial so the Union sought to proceed to arbitration which, under the collective bargaining agreement, is the repository of all unresolved grievances. But the Company refused to arbitrate, taking the view that termination decisions are within the sole discretion of management and are therefore neither the proper subject of a Union grievance nor, it follows, arbitration.

 The general principles necessary to decide this case are longstanding, initially set out by the Supreme Court over 30 years ago and consistently reaffirmed ever since. The first principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

---

1. We will use the abbreviation "C.B.A." when referring to specific provisions of the parties' collective bargaining agreement.

2. The Union argues that because the Company initially treated Stuebe's complaint as a grievance within the meaning of the collective bargaining agreement it has waived any objections to proceeding with the grievance and arbitration process. But the parties have agreed that

[t]he Company's failure to exercise any right ... hereby reserved to it, or the Company's exercise of any such right ... in a particular way, shall not constitute a waiver of the Company's right to exercise such right ... or preclude it from exercising the same in some other way not expressly prohibited by a specific provision of [the] Agreement.
C.B.A. § 2.1.

has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The second is that whether a collective bargaining agreement creates a duty to arbitrate a particular grievance is an issue for judicial determination. *Id.* 475 U.S. at 649, 106 S.Ct. at 1418. Finally, when an agreement contains an arbitration clause, there is a presumption of arbitration in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53)).

■ The parties' agreement establishes a two-part grievance procedure and provides that "[a]ny ... grievance .. that has not been settled at the conclusion [of the grievance procedure] may be appealed to arbitration by the Union...." C.B.A. § 5.3. The agreement defines a grievance as "an allegation by an employee or the Union that the Company has violated an express provision of [the] Agreement." C.B.A. § 5.1. Taken together, these provisions provide a right of arbitration that is rather limited. *Compare United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 565, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960) (parties agreed to arbitrate *"all disputes* between the parties 'as to the meaning, interpretation and application of the provisions of this agreement.'") (emphasis supplied). Here, in order even to assert a grievance, an employee or the Union must allege that the Company has breached a specific provision of the collective bargaining agreement. Unlike in *American Mfg. Co.*, merely "making a claim which on its face is governed by the contract" would seem to be insufficient. 363 U.S. at 568, 80 S.Ct. at 1346.

■ The Union contends that arbitration is available to determine whether Stuebe was discharged for "just cause." But there is no provision in the agreement that restricts the Company's right to terminate employees to the rubric only "for just cause." Quite to the contrary, the agreement specifically vests in the Company "the rights, in accordance with its sole and exclusive judgment and discretion: to reprimand, suspend, discharge, or otherwise discipline employees...." C.B.A. § 2.1. As a result, the Union is left to rely upon an *implied* "just cause" provision. We have indeed held, on several occasions, that the existence of an arbitration clause implies the existence of a "just cause" provision on the theory that the very nature of labor arbitration suggests that arbitrators have the power to order the reinstatement of employees who were fired without cause. *See, e.g., Truck Drivers Local 705, Int'l Bhd. of Teamsters v. Schneider Tank Lines, Inc.*, 958 F.2d 171, 175 (7th Cir.1992); *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir.1981). But an implied term must give way to express provisions in the parties' agreement. E. Allan Farnsworth, Farnsworth on Contracts § 7.16 (1990).

The notion that express statements of the parties' intent trump implied contractual terms is particularly applicable here since a grievance, a sine qua non of arbitration, exists under the language of this contract only if the Union can point to an "express provision" of the collective bargaining agreement that the Company has allegedly violated. Confronted with a similar collective bargaining agreement, the Ninth Circuit stated: "The strict limitations in the arbitration provisions plainly indicate that [management] never acceded to arbitration of implied terms. Allowing arbitration of any implied contractual terms would violate the specific limits of the agreement." *Teamsters Local 315 v. Union Oil Co. of Calif.*, 856 F.2d 1307, 1311 (9th Cir.1988), *cert. denied*, 488 U.S. 1043, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989). Although we find this analysis somewhat persuasive, we prefer not to adopt such a mechanical approach. And, indeed, our cases seem to compel a slightly different analysis.

We have routinely held that collective bargaining agreements often contain implied as well as express provisions and that the authority of an arbitrator includes, in the ordinary course, the power to discover and en-

force such terms. *See, e.g., Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 186 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). We have also encountered situations, such as that presented here, where an agreement's express and implied terms were at odds with one another. For example, in *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists and Aerospace Workers,* 802 F.2d 247 (7th Cir.1986), a union challenged management's right to subcontract certain work instead of recalling an employee who had been laid off and sought arbitration as provided in the parties' collective bargaining agreement. The employer argued that even though a refusal to recall employees might be contrary to an implied prohibition of subcontracting, the agreement's "management rights" provision, which read, in pertinent part, "[t]he Company retains the exclusive right to manage its business and plant [and] to direct its working force," withdrew the subject of subcontracting from the scope of the agreement's arbitration clause. *Id.* at 252–53. We agreed that considered *in vacuo* the language in the management rights clause was broad enough to make subcontracting a "prerogative of management." *Id.* But we went on to add that the management rights clause may not be considered apart from the rest of the agreement and that "the implied terms require that the management-rights provision be given a narrower scope than its language might suggest." *Id.* at 253. Because the parties were really disputing the meaning to be given to the agreement in a particular factual context, we determined that the resolution of the conflict was clearly within the arbitrator's jurisdiction. *Id.*

We have never held, however, that management rights provisions must always yield to any implied provision that an arbitrator might find lurking within the text of a bargaining agreement. In *International Ass'n of Machinists and Aerospace Workers, Lodge No. 1000 v. General Electric Co.,* 865 F.2d 902 (7th Cir.1989), we were confronted with an unusually narrow arbitration clause. The agreement there provided that "matters relating to the management of the Company, including ... the right to control ... the assignment of work ... and it is understood that the parties have not agreed to arbitrate grievances which challenge actions taken by the Company in the exercise of any such rights, except where such challenge is based upon a violation of an express provision of this Agreement." *Id.* at 904. The union argued that in order to invoke arbitration it needed only to base its grievance on some express provision of the agreement. We rejected this interpretation as "too wooden, too blinkered, too literal-minded," *id.* at 905, and stated that by "express provision" the parties "must have meant not any old provision of the agreement but a provision expressly addressed to the dispute the union seeks to arbitrate." *Id.* at 906. The parties' dispute pertained to "work assignments," and, we noted, the union could not cite a provision of the agreement addressed to that question "for the excellent reason that 'the assignment of work' is a nongrievable, nonarbitrable managerial prerogative." *Id.* at 907.

■ From these cases we deduce the following generalization: if the parties have agreed that management has the authority to conduct certain aspects of its business free from any union interference, a conflict arising in this domain is arbitrable only if management is alleged to have violated some specific check on its discretion. The restraint to which we refer may, in some circumstances, be an implied contractual term such as the "just cause" requirement pressed by the Union. But we need not decide that question because the collective bargaining agreement specifies that only alleged violations of express contractual terms create a grievable, and, hence, arbitrable, dispute. The Union does not contend, nor could it reasonably, that the discharge of Stuebe somehow falls outside of the discretion reserved to the Company under the management rights clause. Nor can the Union point to an express provision in the agreement that otherwise delimits the Company's authority to terminate its employees. Consequently, the Union is not entitled to arbitration.

■ Our holding today is intended to be rather narrow. A grievance and arbitration procedure is generally regarded as a union's compensation for agreeing not to strike dur-

ing the period while the agreement is in force, i.e., the quid pro quo for an agreement not to strike. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 n. 4, 80 S.Ct. 1347, 1350 n. 4, 4 L.Ed.2d 1409 (1960). Because "no strike" clauses ordinarily contain few or no exceptions, reciprocity demands that few exceptions be read into the grievance procedure. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

The duty to arbitrate, though, ultimately remains one prescribed by contract, and, if contracting parties agree that certain disputes are not subject to arbitration, their desires will be enforced. What we demand, however, in excluding certain matters from the reach of an arbitration provision, is specificity. *See Dreis & Krump Mfg. Co.*, 802 F.2d at 254 ("If the company wanted an unrestricted right of subcontracting it should have written it into the management-rights clause or created an express exception to the arbitration clause...."). We would not be going too far in saying that a finding of nonarbitrability requires an absolutely undeniable reservation of unfettered managerial authority. The parties here, perhaps intentionally but likely inadvertently, have restricted the grievance and arbitration procedure with the requisite clarity and exactitude. We are left to conclude that the parties' dispute is not arbitrable.

AFFIRMED.