LOCAL UNION 1393 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff–Appellant,

v.

UTILITIES DISTRICT OF WESTERN INDIANA RURAL ELECTRIC MEMBERSHIP COOPERATIVE, Defendant–Appellee.

No. 98–2388.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1998.

Decided Feb. 12, 1999.

Rehearing Denied March 10, 1999.

William R. Groth (argued), Fillenwarth, Dennerline, Groth & Towe, Indianapolis, IN, for Plaintiff–Appellant.

Charles W. Ritz, III (argued), Parr, Richey, Obremskey & Morton, Indianapolis, IN, for Defendant–Appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Local 1393 ("the Union") brought this action to compel the Utilities District of Western Indiana ("Utilities District") to arbitrate a grievance. The district court dismissed the claim on the Utility District's summary judgment motion. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

The Utilities District discharged Dennis Bays for failure to appear at work at the proper time. The Union, acting pursuant to a collective bargaining agreement ("CBA"), then filed a grievance on Bays' behalf. The grievance sought back pay and reinstatement on the ground that the discharge was not for cause.

Article III, Section 1 of the CBA contains a broad grievance clause. It states:

Any difference arising between an employee or a group of employees within the bargaining unit as to [the Utility District's] interpretation or application of this Agreement or any of its terms and conditions may constitute a grievance.

R.1, Ex.A. This grievance clause further requires that, once the Union files a grievance, the concerned employee, the Union steward and the supervisor discuss the issue. If the grievance is not settled within seventy-two hours of that discussion, the grievance must be reduced to writing and submitted to the Utility District's Manager. In its discussion of this stage of the procedure, the grievance clause provides that "[a] decision by the Co-operative's Manager shall be final upon questions of management and matters retained by the employer as provided in [Section] 5 of Article II." *Id.* The grievance clause further states that, "as to any other questions," the Union may demand arbitration of its grievance. *Id.*

The clause referenced by the grievance clause, Article II, Section 5, is the management rights clause. That clause states:

Subject only to any limitations contained in this Agreement, the union recognizes and agrees that the Employer retains the exclusive rights to ... discharge ... and discipline its employees.

*Id.*

In the final CBA provision relevant here, Article V, Section 4 delineates the conditions under which the District may terminate an employee's seniority. One of the conditions is when an employee "[i]s discharged for cause." *Id.*

**B.**

Before the district court, the Union argued that Bays' grievance should be submitted to arbitration. Pointing to the broad grievance provision and to Article V's requirement that the Utilities District must have "just cause" to break an employee's seniority, the Union claimed that the Utilities District also must have "just cause" to terminate employment.

The district court rejected the Union's argument. It found controlling the language of the management rights clause that "the Employer retains the exclusive rights to ... discharge ... and discipline." The court

took the view that this express language of the management rights clause cannot be contradicted by the general and broad language of the arbitration clause. Nor did the court believe that the seniority provision of Article V could be read as limiting the employer's right to terminate employment under the management rights clause. "The right to discharge," wrote the court, "and the right to end an employee's seniority are two different rights. Seniority refers to the continuous service of an employee and is a factor the employer takes into account when making employment decisions.... [S]eniority is not coterminous with employment." Mem. Op. at 7–8.

In short, the district court concluded that the terms of the collective bargaining agreement gave the employer the exclusive right to discharge its employees. The grievance and arbitration provisions of the CBA specifically exempt management's decision to discharge from the requirement of arbitration. The provision governing the termination of an employee's seniority rights does not give that employee the right to have his discharge grievance arbitrated.

**II**

**DISCUSSION**

■ The district court appropriately chose as the starting point of its analysis several cardinal principles emphasized by the Supreme Court of the United States in its recent jurisprudence on arbitration. We shall start our own discussion from the same perspective. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit.' " *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Whether a particular collective bargaining agreement creates a duty to arbitrate is a matter for judicial determination. *See id.* at 649, 106 S.Ct. 1415. Finally, when the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that

" '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* at 650, 106 S.Ct. 1415 (quoting *United Steelworkers,* 363 U.S. at 582–83, 80 S.Ct. 1347). With these general principles in mind, we turn to the particular CBA before us. As the principles stated by the Supreme Court in *AT & T Technologies* make clear, it is the text of that document that must control.

■ At the outset, we agree with the Union that the grievance clause in the CBA is very broad. Nevertheless, the scope of that broad grievance clause is expressly limited by the provision in that clause that "[a] decision by the Cooperative's Manager shall be *final* upon questions of management and matters retained by the employer as provided in [Section] 5 of Article II." Article III, Section 1 (emphasis added). Article II, Section 5, the management rights clause, in turn provides that, "[s]ubject only to any limitations contained in this Agreement, ... the Employer retains the *exclusive* rights to ... discharge ... and discipline." (emphasis added).

■ The Union nevertheless submits that the seniority termination clause provides, explicitly or implicitly, an independent limit on the right of the District to terminate employment. In evaluating this contention, we start with the premises that "the management rights clause may not be considered apart from the rest of the agreement" and that there may be implied terms that give the management rights provision a scope narrower than, at first reading, its terms may suggest. *International Bhd. of Teamsters v. Logistics Support Group,* 999 F.2d 227, 230 (7th Cir.1993). We also have noted, however, that an implied restriction of the management rights clause must be grounded in a provision of the CBA that is "expressly addressed to the dispute the union seeks to arbitrate." *Id.; see also International Ass'n of Machinists & Aerospace Workers v. Gen-*

*eral Elec. Co.,* 865 F.2d 902, 906 (7th Cir. 1989). In short,

> if the parties have agreed that management has the authority to conduct certain aspects of its business free from any union interference, a conflict arising in this domain is arbitrable only if management is alleged to have violated some specific check on its discretion.

*Logistics Support Group,* 999 F.2d at 230.

We do not believe that the seniority rights clause can be considered an express limitation on the right of the employer to terminate employees. A termination of employment does not necessarily also terminate seniority and therefore violate the seniority rights clause of the CBA. The right to seniority and the right to continued employment are distinct concepts that the parties to a CBA may choose to treat separately.

Nor, in the context of this collective bargaining agreement, do we believe that a "just cause" limitation on management's right to discharge can be implied. We have suggested that there may be cases in which it would be appropriate to imply a "just cause" limitation on a management rights clause. *Logistics Support Group,* 999 F.2d at 230.[1] Such an implication would be without foundation in this case, however, because the terms of the management rights clause so clearly state that the Utility District possesses plenary authority over discharge decisions. Here, there is an express clause reserving to management the decision to terminate and another clause precluding arbitration of claims related to termination. In *Logistics Support Group,* we held that an employer could refuse to arbitrate an unjust termination claim because the CBA contained a term expressly reserving for the employer the right to terminate and another term indicating that arbitration was not required unless there was an express term in the CBA indicating that arbitration was appropriate. *See id.* at 230. Although noting that we had held that the existence of an arbitration clause generally implies the existence of a "just cause" provi-

---

1. Arbitrators have implied a "just cause" requirement for termination from a "just cause" for loss of seniority provision. *See, e.g., SFIC*

*Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94,* 103 F.3d 923, 925 (9th Cir.1996).

sion, we were unwilling to imply a "just cause" requirement in that case because of the explicit management rights provision that reserved to management the right to discharge. *See id.* at 229–30.

Similarly, in this case, we cannot discern any basis to imply a "good cause" limitation on the right of management to discharge. The CBA expressly provides the employer with the sole discretion and final authority to terminate; it also provides that this authority is "[s]ubject only to any limitations contained in this Agreement." Those provisions make clear that a "just cause" requirement should not be implied and the employer's decision to terminate should be given final effect.

Therefore, although we accept as a starting point that the presence of an arbitration clause creates a presumption of arbitrability, the provisions of this CBA simply are not susceptible to the interpretation that the Utilities District is required to arbitrate discharge grievances. Here we have "an absolutely undeniable reservation of unfettered managerial authority." *Logistics Support Group,* 999 F.2d at 230. Because the meaning of the CBA is clear, there is no doubt to resolve in favor of arbitrability. Therefore, the presumption is inapplicable. Accordingly, we hold that the plain wording of the CBA reserves to management the right to terminate employment without resort to arbitration.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.