**TEAMSTERS LOCAL UNION
NO. 75, Plaintiff,**

v.

**SCHREIBER FOODS, INC., Defendant.**

No. 98–C–1151.

United States District Court,
E.D. Wisconsin.

Sept. 1, 1999.

Scott D. Soldon, Andrea F. Hoeschen, Kristine E. Aubin, Previant Goldberg Uelmen Gratz Miller & Brueggeman, Milwaukee, WI, for plaintiff.

Thomas P. Krukowski, Stephen G. Katz, Robert J. Bartel, Krukowski & Costello, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Teamsters Local Union No. 75 brought this action to compel Schreiber Foods, Inc. ["Schreiber"] to arbitrate a grievance. The court has jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Both parties have filed motions for summary judgment, and they have agreed that there are no issues of fact precluding this court from deciding whether or not they must submit to arbitration. For the reasons that follow, I find that the collective bargaining agreement ["CBA"] between Schreiber and the union requires them to arbitrate their dispute.

## I. UNDISPUTED FACTUAL BACKGROUND

Under the terms of their CBA with Schreiber, union employees may increase their regular pay by participating in one or more of its "Pay for Performance" ["PP"] incentive programs. (Joint Stipulation of Facts ["SF"] ¶¶ 7–10, Exh. 2.) One of these is the "Safe Work" program, which allows participants to earn an extra 30 cents per hour if they work safely and avoid injuries that require medical treatment. (SF ¶ 7, Exh. 2.) Part of the Safe Work program is a pre-work voluntary exercise program designed to prevent injury from carpal tunnel syndrome. (SF ¶ 10, Exh. 2.) Under the CBA, those who fully participate in the carpal tunnel prevention program can still earn the 30–cent premium if they are diagnosed with carpal tunnel syndrome. (SF ¶ 12, Exh. 2.)

For the first few years of the carpal tunnel prevention program, the exercises were performed during the 15 minutes before the start of the workers' eight-hour shift. Participants were paid overtime—1½ times their regular hourly rate—for the extra 15 minutes. (SF ¶ 15.) In October 1997, however, the company rescheduled the program so that the exercises could only be done during the shift at regular pay. (SF ¶¶ 14; Supplemental SF ["SSF"] ¶ 2.) After the scheduling change, worker participation in the carpal tunnel prevention program dropped from 50% to 31%. (Defendant's Proposed Findings of Fact ["DPFF"] ¶ 2.)

This case arises from Schreiber's scheduling decision, which eliminated the workers' opportunity to earn an extra 15 minutes of overtime pay each shift. The union filed a grievance claiming that this conduct violated the CBA. The company denied the grievance, maintaining that the decision was within its sole discretion. The union sought arbitration of the grievance, but the company refused on the ground that the dispute was not covered by the CBA and its arbitration clause. (SF ¶¶ 17–24.) This lawsuit to compel arbitration followed.

The PP programs were first proposed by the company in 1992. (SF ¶¶ 7–9.) They were formally established in the parties' 1993 CBA, which incorporates a memorandum of agreement that describes the parties' obligations with respect to the PP programs. (SF Exh. 2.) A new CBA containing the same relevant provisions became effective in 1998. (SF Exh. 1.) As there is no material difference between the agreements, I will refer to them collectively as the CBA.

Article 9 of the CBA defines a "grievance" as "a dispute arising under a provision of this Agreement." Under Article

10, a timely grievance that is not settled may be submitted to an arbitrator, who is authorized to render a final decision as to the application of the CBA to the facts of the grievance.

The CBA includes a memorandum of agreement which establishes several PP programs. (SF Exh. 2 at 30, Exh. 1 at 35.) The memorandum provides that employees "will be eligible for hourly pay premiums" for participation in the programs, including the "Safe Work" program. Section 2 of the memorandum further states:

> The Company agrees to establish a training schedule at reasonable times and frequencies to afford employees who desire to participate in the Company's pay for performance programs the opportunity to successfully complete such program before the anniversary date of the agreement as set forth in the parties's [sic] collective bargaining agreement. Should the Company fail to provide this opportunity, the employee will be provided the benefits of such program until the employee has been provided such opportunity.

The carpal tunnel prevention program is specifically mentioned in an exhibit to the memorandum. "In the event an employee is diagnosed with carpal tunnel syndrome, the employee will not lose safework pay, provided the employee fully participates in company sponsored carpal tunnel programs." There are no provisions explicitly requiring Schreiber to pay employees overtime wages for their participation in the carpal tunnel prevention program.

The final provision relevant to this action is section 5 of the memorandum of agreement, which excludes certain aspects of the PP programs from arbitration. It states:

> The administration (for example, including but not limited to, the content of any program, training, questions asked on any exam, grading of the exam, etc.) of the Pay for Performance program is in the exclusive discretion of the Company and it will not be subject to arbitration.

## II. ANALYSIS

 Several established principles apply in cases to compel arbitration pursuant to a CBA. "'Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute that he has not agreed to submit.'" *Local Union 1393 Int'l Brotherhood of Electrical Workers v. Utilities Dist. of Western Indiana Rural Electric Membership Cooperative,* 167 F.3d 1181, 1183 (7th Cir.1999) (quoting *AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Whether a CBA imposes a duty to arbitrate a particular grievance is a matter for the court to decide. *Utilities Dist.,* 167 F.3d at 1182. A court should not rule on the potential merits of the underlying case, unless it must do so in order to answer the question of arbitrability. *Local 744, Int'l. Brotherhood of Teamsters v. Hinckley & Schmitt, Inc.* 76 F.3d 162, 163 (7th Cir. 1996). Finally,

> when the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Utilities Dist.,* 167 F.3d at 1183–84 (quoting *AT & T,* 475 U.S. at 650, 106 S.Ct. 1415).

Schreiber bases its refusal to arbitrate on two grounds. It argues that section 5 of the memorandum of agreement (quoted above) excludes this matter from arbitration because the company's decision constitutes "administration". It also claims that the union's dispute does not "aris[e] under a provision of [the collective bargaining] Agreement" and therefore is not covered by the CBA's arbitration clause.

### A. The "administration" exclusion

 As quoted above, the "administration ... of the Pay for Performance pro-

gram is in the exclusive discretion of the Company and it will not be subject to arbitration." Schreiber argues that this language excludes the union's dispute from arbitration because the company's decision to reschedule the program was part of its administration of the program. I cannot say with reasonable assurance that Schreiber's action falls into the category of "administration" as that term is used in the context of the CBA; thus, I must find in favor of the plaintiff on this issue. *See Utilities Dist.*, 167 F.3d at 1183–84.

"Administration", standing alone, is an ambiguous term. It could refer to every company action that is not dictated by an express provision of the CBA, or it could refer to the day-to-day details of running the PP programs. If the company's action were purely a scheduling decision, I could conclude with some assurance that it was purely administrative. However, as Schreiber itself admits, the purpose of rescheduling was to lower the cost of the carpal tunnel prevention program by reducing the wages of participating employees. Thus the company's action can arguably be described as a decision to eliminate the overtime opportunity previously available to participants. I believe reasonable minds could differ about whether such a decision constitutes "administration".

Conscious perhaps of the ambiguity inherent in the term, the parties used language to illustrate what they meant by "administration": "for example, including but not limited to, the content of any program, training, questions asked on any exam, grading of the exam, etc." The union argues that these examples limit the meaning of administration, under the principle of *ejusdem generis,* to matters that relate to the content of the PP programs. *See Grammatico v. United States,* 109 F.3d 1198, 1204 (7th Cir.1997) (a general provision, when modified by more specific ones, refers to subjects akin to the specific examples). The decision to eliminate in its entirety the overtime opportunity seems different from the type of content-related examples provided in the exclusion. This casts further doubt on the correctness of Schreiber's interpretation, a doubt which should be resolved in favor of arbitration. *See Utilities Dist.,* 167 F.3d at 1183–84.

Section 2 of the memorandum of agreement sets forth Schreiber's obligation to establish a training schedule for the PP programs at "reasonable times". Schreiber itself recognizes that under section 2, it must act in good faith and follow through on its promises to provide programs. Arguably, this obligation may not be wholly consistent with the defendant's claim that the administration exclusion grants it sole discretion over scheduling of the programs.

In short, I believe that the CBA does not exclude this dispute from arbitration with the degree of exactitude required to overcome the presumption of arbitrability. As the court of appeals has stated, "[w]hat we demand, ... in excluding certain matters from the reach of an arbitration provision, is specificity.... We would not be going too far in saying that a finding of nonarbitrability requires an absolutely undeniable reservation of unfettered managerial authority." *Int'l. Brotherhood of Teamsters v. Logistics Support Group,* 999 F.2d 227, 230 (7th Cir.1993). Schreiber falls short of meeting this demanding standard.

**B. Does this dispute arise under a provision of the CBA?**

■ A grievance, which is a prerequisite to arbitration, is defined as "a dispute arising under a provision of this Agreement." The defendant contends that the union's dispute is not arbitrable because it does not arise under any provision of the agreement. I disagree.

The memorandum of agreement is part of the CBA. The memorandum grants employees the right to participate in PP programs, and together with exhibit B–1, it can be read to imply a more specific right to participate in a carpal tunnel prevention program. Under section 2 of the memo-

randum, Schreiber must schedule PP programs at reasonable times in order to give employees the opportunity to participate.

Without expressing any opinion as to the merits of the union's disputed claim, I find that it arises under the provisions of the CBA described above. The union alleges that the company has effectively eliminated the carpal tunnel prevention program for many employees because their other duties prevent them from performing the exercises during the shift. (Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law ¶ 3.) Schreiber denies this, but it is undisputed that participation fell from 50% to 31% after the scheduling change. (DPFF ¶ 2.)

It is not necessary for this court to purport to resolve such factual disputes to decide the arbitrability question. It is clear from the undisputed facts that the union at least has a claim arising under the CBA, namely, that Schreiber has not fulfilled its obligations to maintain a carpal tunnel prevention program and to schedule that program at reasonable times so that employees who want to participate have that opportunity. It is for an arbitrator to decide whether the claim has merit; I am satisfied that it arises under the provisions of the CBA.

Therefore, IT IS ORDERED that the plaintiff's motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the defendant's motion for summary judgment be and hereby is denied.

IT IS FURTHER ORDERED that the defendant is directed to arbitrate the grievance filed by the union on October 27, 1997, in accordance with the procedures set forth in the parties' collective bargaining agreement.

IT IS FURTHER ORDERED that the plaintiff shall recover its costs in connection with these motions.