MASSACHUSETTS NURSES ASSOCIATION *vs.* LYNN HOSPITAL
(and a companion case[1]).

Suffolk.    September 20, 1973.—January 17, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Arbitration. Labor and Labor Union. Contract,* For arbitration, Collective bargaining contract. *Words,* "Agency service fee," "Grievance," "Dispute."

Upon appeals from Superior Court decrees relating to an arbitrator's award, where no evidence or findings were reported, the only question presented was whether the decrees properly could have been entered on the pleadings. [503]

Where a collective bargaining agreement by an employer health care facility and a union provided that if upon its termination the parties were unable to agree on the terms of a successor agreement the matter should be submitted to arbitration, the decision of an arbitrator that a new agreement should contain an "agency service fee" was proper; under G. L. c. 150A, §§ 4 (3), 4 (5), 5 (a), and 9A, the issue of an "agency service fee" was a "dispute" which an employer is required to negotiate and therefore was one which the health care facility was required to submit to arbitration. [503-510]

APPLICATION to confirm an arbitration award filed in the Superior Court on July 13, 1972.

APPLICATION to vacate such award filed in the Superior Court on August 7, 1972.

The cases were heard by *Robert Sullivan,* J.

*Norman Holtz* for Lynn Hospital.

*Arthur J. Flamm* for Massachusetts Nurses Association.

_____

[1] The companion case is Lynn Hospital *vs.* Massachusetts Nurses Association.

QUIRICO, J. These are appeals by the Lynn Hospital (hospital) from final decrees of the Superior Court relating to an arbitrator's award in a labor dispute between the hospital, as employer, and the Massachusetts Nurses Association (union), as the exclusive collective bargaining agent for the nonsupervisory registered nurses employed by the hospital. After the arbitrator made his award, the union filed an application to confirm it and the hospital filed an application to vacate it. The judge entered a final decree confirming the award in the first case and a final decree dismissing the hospital's application to vacate the award in the second case. The hospital is appealing from both decrees.

The appeal from the final decree confirming the award is before us on the union's application for confirmation, the hospital's answer thereto, and the appendices incorporated in the pleadings. The appeal from the final decree dismissing the hospital's application to vacate the award is before us solely on the application and an appendix thereto. If any evidence was introduced before the judge of the Superior Court, it is not reported. There is no report of any findings of fact by the judge, and there is no request for a report of material facts found, if any. The only question presented by such a limited record is whether the decrees appealed from properly could have been entered on the pleadings. *Novick* v. *Novick,* 299 Mass. 15 (1937). *Dunn* v. *McSweeney,* 338 Mass. 270, 273 (1959). See *M. S. Kelliher Co.* v. *Wakefield,* 346 Mass. 645, 647 (1964). We hold that both decrees could have been entered on the pleadings.

There is little, if any disagreement on the following facts which are alleged in either or both the union's and the hospital's applications. The hospital is a "health care facility" as defined in G. L. c. 150A, § 2 (10), inserted by St. 1964, c. 576, § 3.[2] The union is a "labor organization" as defined by G. L. c. 150A, § 2 (5), inserted by St. 1938, c. 345

---

[2]The words "health care facility" are defined to include "any person . . . [or corporation] engaged, whether or not for profit or as a public charity, in the operation of a general, mental, chronic disease, tuberculosis, or other type of hospital, clinic or infirmary . . .."

§ 2.[3] Since February 21, 1966, the union has been the exclusive collective bargaining representative for all registered nurses in the employ of the hospital, except for certain specified supervisory personnel. The hospital and the union were parties to a collective bargaining agreement covering the period from October 4, 1970, to October 2, 1971. The agreement provided that in the event the parties were unable to agree on the terms of a successor agreement, the dispute would be submitted to arbitration in accordance with the rules of the American Arbitration Association. This provision was invoked when the parties failed to agree on a successor agreement. An arbitrator designated by the American Arbitration Association held hearings and thereafter issued an award and delivered copies of it to the parties on or about June 1, 1972. The union filed its application to confirm the award on July 13, 1972. The hospital filed its application to vacate the award on August 7, 1972, or more than two months after receiving a copy of the award.

The union contends that because G. L. c. 150C, § 11 (b), inserted by St. 1959, c. 546, § 1, requires, with exceptions not pertinent to these cases, that an application to vacate an arbitration award "shall be made within thirty days after delivery of a copy of the award to the applicant," the hospital's application was not seasonably filed and was therefore properly dismissed by the judge. In *Greene v. Mari & Sons Flooring Co. Inc.* 362 Mass. 560, 562 (1972), we said that the statutory thirty day time limit "applies to all attempts to vacate or modify an arbitrator's award which rest on nonjurisdictional claims." The hospital counters with the argument that the ground on which it bases its application makes the statutory time limit inapplicable. Since we prefer to dispose of these cases on their merits we do not decide the issue of the seasonability of the application. See *Trustees of the Boston*

---

[3]The words "labor organization" are defined to mean "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

*& Maine Corp.* v. *Massachusetts Bay Transp. Authy.* 363 Mass. 386, 393-394 (1973).

Both the hospital's objection to the confirmation of the award and the hospital's application to vacate the award are directed solely against the arbitrator's decision that the new agreement should contain a provision which, if accepted by vote of the members of the bargaining unit, would require all subsequently hired registered nurses who did not join the union to pay the union $2.10 a month as the *"pro rata* share of the actual cost to the . . . [union] of conducting collective bargaining for all bargaining unit personnel" at the hospital. This type of fee was referred to by the arbitrator as the "Association service fee" or as the "service fee." Such a fee is commonly and herein called an "agency service fee." See *Karchmar* v. *Worcester, ante,* 124, 126 (1973). Regular monthly union dues are approximately $4.77.

The hospital concedes in its application to vacate the award that such a provision "could be the subject of voluntary collective bargaining" but argues that it could not be determined by arbitration in these cases because the arbitration was mandatory and not voluntary.[4] This assertion about the mandatory nature of the arbitration is based on two sections inserted in our Labor Relations Law, G. L. c. 150A, in 1964: § 4C, inserted by St. 1964, c. 576, §4, which defines as an unfair labor practice both (1) the lockout of its employees by a health care facility and (2) a strike or other types of work stoppages by nurses employed by the facility; and § 9A, inserted by St. 1964, c. 576, § 9, which provides that if there is a grievance or dispute between a health care facility and the collective bargaining agent for its nurse employees, and if there is either no collective bargaining agreement in effect or an agreement which makes no provision for the arbitration of such a grievance or dispute, the matter shall be submitted to arbitration under G. L. c. 150C "as though the parties had negotiated a collective bargaining agreement containing a provision as described in . . . [§ 1 of

---

[4] We discuss the distinction raised between voluntary and mandatory subjects of collective bargaining, *infra,* at p. 507-510.

c. 150C] to submit to arbitration and such agreement were then in force.''

It is not clear on the record before us that the arbitration in these cases was mandatory in the sense that it fell within the scope of § 9A. That section applies only ''if there is no collective bargaining agreement in force between the parties, or such an agreement is in force but it contains no provision to submit the current grievance or dispute .. . . to arbitration.'' In these cases the union alleged that the collective bargaining agreement which was expiring ''provided that in the event the parties were unable to reach agreement on a successor agreement, the dispute would be submitted to arbitration.'' The hospital admitted that allegation in its answer and it made a similar allegation in its application to vacate the award. Therefore it appears that the parties had bound themselves contractually to arbitrate the present dispute, and not that they arbitrated under the compulsion of any statute. However, since the statute would require the parties to arbitrate even if there were no contractual obligation to do so, we assume, as did the parties, that their arbitration was statutorily mandatory.

The hospital's argument may be summarized as follows: By G. L. c. 150A, § 4 (3), (6), the Legislature has provided that an employer may voluntarily enter into an agreement with a union requiring union membership as a condition of employment. However, Massachusetts case law holds that a union may not strike to compel an employer to agree to any type of agreement for union security, whether it be a closed shop clause or a more narrow type of provision. When in 1964 the Legislature extended collective bargaining rights to nurse employees of health care facilities, it prohibited strikes and substituted arbitration as the sole vehicle for resolution of disputes between these parties. (See G. L. c. 150A, §§ 4C, 9A, discussed above.) An agency service fee provision is a form of union security. Since a union could not resort to a strike to compel acceptance of such a provision by an employer, a health care facility similarly cannot be subject to the coercion of mandatory arbitration, the statutorily re-

quired substitute for the strike, for the accomplishment of the same end.

There are two principal reasons why we cannot and do not accept the hospital's argument. The first is that it relies in part on a number of decisions of this court in the field of labor law which were handed down before the veritable revolution in the law on that subject following the enactment of the Norris-LaGuardia Act in 1932 and the Wagner Act in 1935 (see now 29 U. S. C. §§ 101-115 and 151-168 [1970], respectively) had run its full course. While the correctness of that reliance may be debatable, we need not resolve the issue here.[5] The second and dispositive reason is that the hospital's argument fails to give effect to the applicable portions of the large body of statute law concerning labor relations enacted in this Commonwealth, starting with the first version of our "State Labor Relations Act," enacted by St. 1937, c. 436, and now contained in G. L. c. 150A.

The hospital is correct in its assertion that G. L. c. 150A, § 9 (a), makes mandatory the arbitration of a "grievance or dispute" between a health care facility and the collective bargaining representative of its nurses and nonprofessional employees, even if the parties have not agreed to arbitrate. But § 9A (b) then defines the words "grievance" and "dispute" as follows: "As used in this section the word 'grievance' shall mean any controversy or claim arising out of or relating to the interpretation, application or breach of the provisions of an existing collective bargaining agreement between a health care facility . . . and any of its nurse or nonprofessional employees or their representatives; the word 'dispute' shall mean all other controversies, claims or disputes between a health care facility . . . and any of its

<hr>

[5]The union contends that the hospital's argument against confirmation must fail because the major premise on which it is based—that a union may not lawfully strike for a union security agreement—is not supported by current Massachusetts statutory or case law. The union cites G. L. c. 149, § 20C (d) (5), inserted by St. 1950, c. 452, §2, as making lawful a strike for a union security agreement, and therefore for an agency service fee provision. The language of the cited section appears to support the union's interpretation, but we note that the definitions contained in § 20C are expressly stated to apply to a specific list of other chapters and sections which does not include any sections in c. 150A. We do not decide here whether they have any application to c. 150A since we uphold the action of the Superior Court on other grounds.

nurse or nonprofessional employees, or their representatives, concerning rates of pay, hours or other terms or conditions of employment in such facility . . . including, but not limited to, controversies, claims or disputes arising in the course of negotiation, fixing, maintaining, changing or arranging any such terms or conditions.''

We note that the Legislature fixed the outer limits of its definition of the word ''dispute'' by the following words: *"all other controversies, claims or disputes . . . concerning rates of pay, hours or other terms or conditions of employment"* (emphasis supplied). This language is strikingly similar to that used by the Legislature in G. L. c. 150A, § 5 (a), as amended, to the effect that the designated bargaining representative for a unit of employees shall represent all of the employees in that unit *"for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment"* (emphasis supplied). We think this similarity requires the conclusion that the nature and types of labor disputes which the Legislature made subject to mandatory arbitration under G. L. c. 150A, § 9A, are substantially coextensive with those disputes which are by statute also made subject to mandatory negotiation between an employer and the collective bargaining representative of its employees.

The hospital claims that an agency service fee provision does not fall within the limits of such mandatory negotiation and therefore cannot be made subject to mandatory arbitration. It draws a distinction between mandatory and voluntary subjects of collective bargaining and places an agency service fee provision in the latter class, at least in so far as Massachusetts law is concerned. We cannot agree with this characterization of the agency service fee provision.

In *Karchmar* v. *Worcester, ante,* 124, 133-134 we said: ''[T]he concept of an agency service fee provision in a collective bargaining agreement . . . is but a variation of the union shop concept which is of much earlier statutory origin. Since the enactment of the Wagner Act in 1935, Federal statutes have provided that their specific prohibitions against

unfair labor practices by employers do not 'preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later.' See now Labor Management Relations Act, 29 U. S. C. § 158 (a) (3) (1970). In *National Labor Relations Bd.* v. *General Motors Corp.* 373 U. S. 734 [1963], it was held that this Federal statute permitted contracts with provisions substantially similar to the agency service fee provision involved in the present case. . . . A substantially similar statute of this Commonwealth, G. L. c. 150A, § 4 (3), enacted by St. 1937, c. 436, § 8 (3), and inserted in General Laws by St. 1938, c. 345, § 2, was upheld as a proper exercise of legislative power in *Hamer* v. *Nashawena Mills, Inc.* 315 Mass. 160, 163-166 [1943]."

The broad language of c. 150A, § 5 (a), quoted above, supports the conclusion that an agency service fee provision is a proper subject for collective bargaining. Section 4 (5) of the same chapter states that it is an unfair labor practice for an employer to "refuse to bargain collectively with the representatives of his employees, subject to the provisions of . . . [c. 150A, § 5 (a)]."

In *National Labor Relations Bd.* v. *General Motors Corp.* 373 U. S. 734, 744-745 (1963), mentioned in the *Karchmar* case, *supra,* the Supreme Court held that the employer had violated its duty under the Federal labor statute to bargain collectively by refusing to negotiate a union security provision similar to the agency service fee. The hospital concedes that this *General Motors* case holds that a union security provision is a mandatory subject of collective bargaining, provided, however, that the type of provision is not banned by State law. It is true that the National Labor Relations Act permits a State to prohibit union security agreements, 29 U. S. C. § 164 (b) (1970), but Massachusetts has not done so. On the contrary, it has expressly permitted such provisions to be part of collective bargaining agreements. See c. 150A, § 4 (3).

and 5 (a), we conclude that the issue of a proposed agency service fee provision is one on which employers are required to negotiate with the collective bargaining representatives of their employees; and that it is therefore an issue which a health care facility, such as the hospital, is required to submit to arbitration under c. 150A, § 9A, if and when negotiations between such facility and a union representing its nurses or nonprofessional employees fail to produce an agreement.

The remaining contention of the hospital that the award of the arbitrator was not a final award is without merit. The award disposed of the issues on which the parties were unable to agree. It did not attempt to dictate "specific contract language," but left that to the parties. The arbitrator retained jurisdiction of the case for the limited purpose of allowing the parties to settle on the specific contract language. The award was no less complete or final than it would have been if the arbitrator had not retained jurisdiction for that limited purpose.

The final decree confirming the arbitrator's award and the final decree dismissing the hospital's application to vacate the award are affirmed.

*So ordered.*