**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, SHOPMEN'S LOCAL UNION 501, Plaintiff,**

v.

**BURTMAN IRON WORKS, INC., Defendant.**

**CA No. 95–11571–JLT.**

United States District Court, D. Massachusetts.

May 30, 1996.

Alan H. Shapiro, Sandulli, Grace, Shapiro, Horwitz & Davidson, Boston, MA, for International Association of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Union 501.

Harold N. Mack, Morgan, Brown & Joy, Boston, MA, Paul Prew, DiMento & Sullivan, Boston, MA, Philip A. Tracy, Jr., Boston, MA, for Burtman Iron Works Incorporated.

Michael K. Gillis, Gillis & Bikofsky, P.C., Newton Centre, MA, for Paul Andrews.

## MEMORANDUM

TAURO, Chief Judge.

International Association of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Union 501 ("Local 501") brings this action to confirm a labor arbitration award entered in its favor against Burtman Iron Works, Inc. ("Burtman"). In its answer to Local 501's complaint, Burtman asserted a counterclaim, seeking to vacate the arbitration award. Presently before the court is Local 501's motion to dismiss the counterclaim.

## I.

### BACKGROUND

For approximately fifteen years, Local 501 has represented a bargaining unit of employees at Burtman's facility in the Hyde Park section of Boston, Massachusetts. On July 15, 1992, the then current collective bargaining agreement between the parties expired. On July 21, 1992, Burtman discharged Paul Andrews, an employee represented by Local 501. Local 501 grieved the discharge and, after Burtman refused to arbitrate the issue, filed an unfair labor practice charge with the National Labor Relations Board (the "NLRB").

In September 1992, the parties settled on terms of a new collective bargaining agreement (the "1992 CBA"), purportedly agreeing that it become retroactively effective on July 16, 1992. Local 501 withdrew its unfair labor practice charge and renewed its request to arbitrate Andrews' dismissal. Burtman again refused and Local 501 filed a complaint to compel arbitration in the Suffolk Superior Court of the Commonwealth of Massachusetts. The state court agreed with Local 501's position that the dispute regarding Andrews' discharge was governed by the 1992 CBA and ordered that Burtman submit to arbitration "concerning the discharge of Paul Andrews pursuant to the applicable terms" of that agreement.

On March 19, 1995, the arbitrator ruled for Local 501, finding that Andrews had been discharged without proper cause (the "March Award"). As the remedy, the arbitrator required that:

> [Andrews] shall be reinstated with back pay and lost benefits and seniority. Any interim earnings that were, or could have been, earned shall be deducted from the back pay [Burtman] owes him. His record may show two written reprimands for theft of time and disrespect to a supervisor on July 21, 1992. In all other respects, his record shall be purged of this incident.

With respect to overseeing this remedial award, the arbitrator further provided that:

> The arbitrator will retain jurisdiction over this matter in order to handle any disputes relating to the remedy. In accordance with the parties' agreement, [Burtman] shall immediately offer reinstatement to [Andrews]. The parties shall meet and confer in an attempt to agree on the amount of back pay due. They shall contact the arbitrator to advise of the need for a back pay hearing to be held on the agreed upon date of April 5, 1995.

Though the precise date that Burtman received the March Award is unclear from the record, it is clear that Burtman received it no later than March 27, 1995 for, on that date, Burtman reinstated Andrews.

Unable to resolve the amount of back pay owed to Andrews, the parties returned to the arbitrator. On June 21, 1995, the arbitrator awarded Andrews $72,447.74 in back wages and required Burtman to pay the National Shopmen Pension Fund $4,000.70 on Andrews's behalf (the "June Order"). Burtman has not complied with the June Order.

On July 5, 1995, Local 501 filed an action in the Suffolk Superior Court of the Commonwealth of Massachusetts to confirm the arbitration award pursuant to M.G.L. 150C § 10. On July 21, 1995, Burtman removed to this court on the basis of this court's jurisdiction over enforcement of collective bargaining agreements under section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C.A. § 185 (West 1978).[1] Burtman answered Local 501's complaint on July 28, 1995. The answer contained a counterclaim, seeking that the arbitration award be vacated on the ground that, as Burtman had earlier asserted, Andrews' dismissal was not arbitrable under the 1992 CBA. Local 501 now moves to dismiss the counterclaim, contending that it is barred by the statute of limitations.

## II.

### DISCUSSION

In *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 487 (1st Cir.1983), the First Circuit held that the limitations period for motions to vacate an arbitration award under section 301 of the LMRA is provided by state law. Under Massachusetts law, a motion to vacate an arbitration award in a case involving a labor dispute must be filed within thirty days after the moving party receives the award. M.G.L. c. 150C § 11(b). *Derwin*, 719 F.2d at 489; *International Ass'n of Heat and Frost Insulators and Asbestos Workers, Local Union No. 6 v. Thermo–Guard Corp.* ("*Thermo–Guard* "), 880 F.Supp. 42, 47 (D.Mass.1995).

1. *See generally General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) (enforcement of arbitration award arising out of dispute under collective bargaining agreement presents a federal question under section 301 of the LMRA).

Local 501 contends, *inter alia*, that the period for filing the motion to vacate commenced on the date that Burtman received the March Award and, thus, Burtman's counterclaim was not submitted within the thirty day limitation period.[2] Burtman does not dispute that the counterclaim was filed more than thirty days after it received the March Award, but counters that the March Award was not final because the arbitrator retained jurisdiction to resolve remedial issues related to the award of back pay. The issue before the court, then, is whether an action under section 301 of the LMRA to vacate an arbitration award accrues even though the arbitrator specifically retains jurisdiction to determine the amount of back pay.

Before reaching the merits, the court must resolve a threshold issue regarding its choice of law, namely, whether federal courts should also look to state law to determine the date on which the limitation period for a section 301 action accrues. Though the court has not found a case directly addressing this issue, federal courts addressing statute of limitation challenges to actions seeking to enforce or vacate arbitration awards under section 301 have simply examined general principles regarding the finality of arbitration decisions, rather than inquiring into how the relevant state jurisdiction would decide the accrual issue. *See, e.g., Burns Int'l Sec. Servs., Inc. v. International Union, United Plant Guard Workers of America (UPGWA) and Its Local 537*, 47 F.3d 14, 16 (2nd Cir. 1995); *Local 36, Sheet Metal Workers Int'l Ass'n, AFL–CIO v. Pevely Sheet Metal Co., Inc. ("Pevely")*, 951 F.2d 947, 949 (8th Cir. 1992); *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists and Aerospace Workers*, 802 F.2d 247, 250–51 (7th Cir.1986). Following the implicit holding of these cases, the court concludes that the date on which a section 301 action accrues is a matter of the federal common law.[3] *Cf. International Union of Operating Eng'rs, Local 150, AFL–*

*CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir.1987) (declining to borrow aspects of state statute of limitations other than the period provided).

As a general matter, federal courts decline to review an arbitrator's decision under section 301 of the LMRA until the award is final. *Orion Pictures Corp. v. Writers Guild of America, West, Inc.*, 946 F.2d 722, 724 (9th Cir.1991). " 'To be considered "final," an arbitration award must be intended by the arbitrator to be a complete determination of every issue submitted....' " *Millmen Local 550, United Bhd. of Carpenters and Joiners of America, AFL–CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (quoting *Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 883 (7th Cir.1985)). "Where an arbitrator retains jurisdiction in order to decide a substantive issue the parties have not yet resolved, this retention of jurisdiction 'indicates that the arbitrator did not intend the award to be final.' " *Orion Pictures*, 946 F.2d at 724 (quoting *Millmen*, 828 F.2d at 1376–77). As with the finality doctrine governing appeals from district court orders, this "complete arbitration rule" preserves judicial resources by preventing piecemeal litigation. *Union Switch & Signal Div. American Standard Inc. v. United Elec., Radio and Mach. Workers of America, Local 610*, 900 F.2d 608, 610–11 (3rd Cir. 1990); *Millmen*, 828 F.2d at 1375.

The complete arbitration rule, however, does not mean that the mere possibility that an arbitrator may need to take further action renders an award nonfinal. Indeed, if that were the case, the frequent recourse of arbitrators to equitable remedies would, as a practical matter, leave some arbitration decisions unreviewable. *Dreis*, 802 F.2d at 250. Similarly, an arbitrator's use of boilerplate language generally retaining jurisdiction does not make an award nonfinal. *Id.* Nor does a party moving for reconsideration of an

---

**2.** Failure to bring a vacatur action within the limitation period extinguishes the right of a party to plead defenses and counterclaims in a confirmation action that could have served to support the vacatur action. *Derwin*, 719 F.2d at 489.

**3.** In any case, because there are no Massachusetts cases regarding the date of accrual of a motion to vacate an arbitration award of this type under M.G.L. c. 150C § 11(b), the court has no reason to believe that Massachusetts law differs from federal law on this point.

arbitration award toll the running of the limitations period. *Id.* Underlying these conclusions is the recognition that the value of expeditious dispute resolution outweighs the prospect of successive litigation arising from action taken by an arbitrator subsequent to the award. *Cf. United Paperworks Int'l Union, AFL–CIO v. Misco, Inc. ("Misco")*, 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987) (explaining that limited role of federal courts in reviewing merits of an arbitration award is premised on federal labor policy of "speedy resolution of grievances by private mechanisms").

For similar reasons, the Seventh Circuit has stated in *dictum* that where an arbitrator awards back pay without specifying an amount and retains jurisdiction "to resolve any remaining or unforeseen issues as to relief," the reservation of jurisdiction does not render the arbitrator's decision nonfinal. *Dreis*, 802 F.2d at 251. This dictum follows from the Supreme Court's review of an arbitration award that left the amount of the back pay remedy unresolved in *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In that case, calculation of the back pay award also required subtraction of "such sums as [the] employees received from other employment." *Id.* at 595, 80 S.Ct. at 1360. *See also International Union of Operating Engineers, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 188–89 (7th Cir.1996); *Burns*, 47 F.3d at 16; *ILWU Local 142 v. Land & Constr. Co., Inc.*, 498 F.2d 201, 203, 206 (9th Cir.1974). The Second Circuit recently summed up the relevant rule when it wrote that "the reservation of jurisdiction over a detail like overseeing the precise amount of back pay owed does not affect the finality of an arbitrator's award." *Burns*, 47 F.3d at 16.

Implicit in *Enterprise Wheel* and its progeny is the conclusion that for the purposes of finality of such labor arbitration awards, the significant factor is the arbitrator's decision to provide a remedy for back pay. Once that decision is made, the determination of the precise amount of back pay, whether or not there are ancillary issues relating to its calculation, does not render the award suffi-ciently incomplete to warrant delaying consideration of a motion to vacate. Though this is at variance with judicial doctrine regarding the finality of judgments, Judge Posner has explained the rationale underlying this difference:

> [T]he analogy between a suit to set aside an arbitration award and an appeal from a regular judgment is just an analogy, and not an identity, and it breaks down on the issue of finality. A suit to set aside an arbitration award under section 301 of the Taft–Hartley Act is a suit for breach of contract, the contract being the arbitration clause of the collective bargaining agreement; and the suit is ripe as soon as the breach is definitive. Quite apart from the details of backpay, the rendition of an award which if the company is correct ordered it to do things … that were in excess of the arbitrator's authority to order was a breach of contract that set the statute of limitations running.

*Dreis*, 802 F.2d at 251. Similarly, here the "breach" advanced by Burtman in its counterclaim—the nonarbitrability of the dispute—was definitive as soon as the arbitrator awarded reinstatement, back pay, and lost benefits to Andrews. All that the arbitrator retained jurisdiction to decide was the amount of that remedy.

The limited scope of court review of arbitration awards comports with the view that an action to vacate is ripe once the arbitrator has made an award with respect to the nature, though not the amount, of the remedy. Most significant for present purposes is the fact that "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Misco*, 484 U.S. at 38, 108 S.Ct. at 370–71. As such, where an arbitrator has, as in the instant case, determined liability and declared a back pay remedy, an arbitrator's retention of jurisdiction to determine the amount of that back pay remedy will not alter, except in the most exceptional of cases, the grounds that the losing party can bring to support an action to vacate. Postponing the accrual of a vacatur action until the precise amount of the

remedy is determined by the arbitrator, then, would simply serve to frustrate federal labor policy regarding speedy resolution of the labor dispute. Accordingly, the court holds that the reservation of jurisdiction by an arbitrator to determine the amount of back pay does not render the award nonfinal for the purposes of triggering the limitations period for a motion to vacate.[4]

In reaching this conclusion, the court is cognizant of persuasive authority supporting a different rule. Drawing from the reference in *Dreis* to calculation of back pay as a ministerial task, the Eighth Circuit has held that an arbitration award is not final if resolving the undetermined damages does "not merely involve a simple calculation, but require[s] resolution of significant issues." *Pevely,* 951 F.2d at 949. *See also Millmen,* 828 F.2d at 1377. In *Pevely,* to resolve the outstanding damages issue:

> [the arbitrator] had to determine the number of employees covered by the collective bargaining agreement; the rate of pay these employees should have received during this period; the type of work performed by [the employer]; and what fringe benefit contributions should be made on behalf of employees under the collective bargaining agreement.

*Id.* See also *Local 42 v. O'Rourke Heavy Highway Co.,* 151 L.R.R.M. (BNA) 2348 (E.D.Mo.1996) (reservation of jurisdiction by arbitrator to decide mitigation required disposition of significant issues which precluded initial award of requisite finality), *vacated on joint motion of the parties,* 1996 WL 81919 151 L.R.R.M. (BNA) 2509, 1996 WL 81919 (E.D.Mo.1996). Relying on *Pevely,* Burtman

maintains that the arbitrator's exclusion from the back pay award of amounts that Andrews "could have earned" rendered determination of the back pay award more than ministerial.[5]

The court declines to apply the finality rule announced in *Pevely* to this case for principally two reasons. First, *Pevely* involved an action to confirm an arbitration award, whereas this case involves an action to vacate. While a breach of the collective bargaining agreement with respect to an action to vacate is, as Judge Posner explained in *Dreis,* complete when back pay is awarded, the breach with respect to the action to confirm in *Pevely* was not complete until the amount of damages had been established inasmuch as the relevant breach for the confirmation action is the employer's refusal to pay the damages awarded by the arbitrator.

Distinguishing between the dates on which actions to vacate and to confirm accrue furthers national labor policy. *Cf. Service Employees Int'l Union, Local No. 36, AFL–CIO v. Office Center Services, Inc.,* 670 F.2d 404, 412 (3rd Cir.1982) (explaining policy supporting different limitation periods for motions to vacate and confirm). As discussed above, requiring an early date for a motion to vacate clearly enhances speedy resolution of labor disputes by expediting the date on which an arbitration award is rendered definitive. In contrast, postponing the date on which an award can be confirmed where significant issues remain regarding the amount of that award, allows the prevailing party in arbitration to adjust terms of the award in light of the economic realities of the marketplace. *Id.*

---

4. As noted above, the court has not found a Massachusetts decision directly on point. Nonetheless, the Supreme Judicial Court has found that an arbitration award was final in an analogous context. *Massachusetts Nurses Ass'n v. Lynn Hospital,* 364 Mass. 502, 306 N.E.2d 264 (1974). In that case, the arbitrator entered an award requiring that a new collective bargaining agreement contain a service fee provision. *Id.* at 505, 306 N.E.2d at 266. The award, however, did not dictate the specific contract language and retained jurisdiction for the limited purpose of allowing the parties to settle on the specific language. *Id.* at 510, 306 N.E.2d at 269. Despite this reservation of jurisdiction, the Supreme Ju-

dicial Court held that the arbitration award was final. *Id.*

5. Burtman also contends that this case is unique because of the specific provision by the arbitrator of a date for the parties to return should they be unable to agree on the amount of the remedy. The court, however, does not find the distinction between articulating a precise date and setting a specific time period to be a salient distinction. Moreover, the fact that the parties agreed to bifurcate determination of any back pay remedy simply supports the view that the March Award is final and binding as to the issues there decided. *See Millmen,* 828 F.2d at 1376 n. 3.

Second, the court is unpersuaded that the distinction between ministerial tasks and significant issues provides a sufficiently clear guide for determining whether a vacatur action has accrued. While determining back pay less interim earnings can be a simple matter of plugging in numbers, it need not be. An employer may dispute, for example, the wage rate the employee would have received, the hours he would have worked, and the promotions he would have been due. Indeed, in cases such as *Dreis* where the parties were unable to reach a figure, the failure to agree about the "ministerially calculable" amount may have resulted from a disagreement about such issues. Thus, while it may be simple to determine *ex post* whether significant issues exist regarding calculation of a back pay award, it is much more difficult to determine *ex ante* whether such issues will arise.[6] Under the *Pevely* rule, however, it is *ex ante*—at the time that the arbitrator makes the initial award—that the losing party must decide whether the limitations period has commenced. In light of the extremely short period for bringing a vacatur action, such an indeterminate rule does not provide the losing party with the necessary clarity for planning its next step in the dispute resolution process.

For these reasons, the court concludes that the reservation of jurisdiction by an arbitrator to determine the amount of back pay does not render the award unripe for review in an action to vacate. Accordingly, because Burtman failed to bring a motion to vacate the arbitration award within thirty days of its receipt of the March Award, the court concludes that its counterclaim is untimely.[7]

III.

*CONCLUSION*

 For the reasons discussed above, the court concludes that Local 501's motion to dismiss counterclaim should be ALLOWED.[8]

An order will issue.

---

6. The instant case exemplifies this difficulty. Though resolution of the amount of earnings Andrews could have earned would require evidence showing Andrews' failure to pursue employment, there was never any evidence presented to the arbitrator to suggest that there was a genuine dispute regarding Andrews' efforts to mitigate.

7. In light of this disposition, the court declines to reach Local 501's alternative contention that, if the receipt of the second arbitration award is the operative date, the counterclaim was nonetheless untimely.

8. Local 501 also requests that attorney's fees for bringing this motion be assessed against Burtman. "When a party refuses to comply with an enforceable arbitration decision without justification the court may award attorney's fees." *Thermo–Guard*, 880 F.Supp. at 48 (citing cases). The court concludes that Burtman's reliance on *Pevely* was not without a rational basis and, thus, declines to award fees incurred by Local 501 for its motion to dismiss Burtman's counterclaim.