**LOCAL 509, SERVICE EMPLOYEES INTERNATIONAL UNION,**
Plaintiff,

v.

**FIDELITY HOUSE, INC. d/b/a Fidelity House Human Services, Defendant.**

**Civil Action No. 06–11222–RBC.[1]**

United States District Court,
D. Massachusetts.

Sept. 28, 2007.

---

1. With the parties' consent, on May 22, 2007 this case was reassigned to the undersigned for all purposes, including trial and the entry judgment, pursuant to 28 U.S.C. § 636(c).

Tod A. Cochran, Pyle, Rome Lichten, Ehrenberg & Liss–Riordan, P.C., Boston, MA, for Plaintiff.

John D. Doran, Jr., Littler Mendelson, PC, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (# 11) AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (# 14)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On July 17, 2006, Local 509, Service Employees International Union (the "plaintiff" or "Union") filed a complaint (# 1) to confirm an arbitration award on behalf of its member Suzanne Comeau ("Comeau") against her employer Fidelity House, Inc. d/b/a Fidelity House Human

Services (the "defendant" or "Fidelity House"). In due course on October 6, 2006, the defendant filed its answer (# 2) to the complaint. It was agreed at a scheduling conference on January 11, 2007, that the case was one that could be decided on the papers. To that end on February 12, 2007, the parties filed cross-motions for summary judgment (# # 11, 14) together with memoranda in support of their respective motions (# # 12, 14) as well as statements of undisputed facts (# # 13, 16). Thereafter on March 3, 2007, Local 509 submitted an opposition (# 17) to the defendant's motion accompanied by a memorandum of law (# 18). On the same date Fidelity House filed its response (# 19) to the plaintiff's dispositive motion. Following a May 25, 2007 hearing, the summary judgment motions stand ready to be resolved.

### II. The Facts

The facts of the case are, for the most part, undisputed. Fidelity House is an employer which provides services for developmentally disabled persons. (# 1, Exh. B; # 16 ¶ 1 [2]) The Union represents a group of Fidelity House employees, including part-time employee Suzanne Comeau. (# 1, Exh. B; # 13 ¶ 2; # 16 ¶ 2) In 2005 the Union and Fidelity House were parties to a collective bargaining agreement which, interalia, included grievance and arbitration provisions. (# 1, Exh. A; # 13 ¶ 1; # 16 ¶ 2)

For over ten years Ms. Comeau had worked twenty-three hours per week for Fidelity House as an Individual Support Services direct care provider for two individual clients. (# 1, Exh. B at 2; # 13 ¶ 4; # 16 ¶ 3) On January 12, 2005, Ms. Comeau

---

2. Unless otherwise indicated, reference shall be made to the parties' statements of undisputed facts rather than the underlying supporting materials. Since neither of the parties has controverted the other party's undisputed facts, all of the proposed undisputed facts are deemed to be admitted. *See* Local Rule 56.1.

was discharged by the defendant on the grounds that she " 'violated an individual's human rights by jeopardizing their [sic] health and safety.' " [3] (# 1, Exh. B at 2; # 16 ¶ 3) The plaintiff grieved the termination and ultimately demanded an arbitration hearing when the issue could not be resolved amongst the parties themselves. (# 1, Exh. B; # 13 ¶ 2)

On July 12, 2005, a hearing was held before an arbitrator designated in accordance with the terms of the collective bargaining agreement. (# 1, Exh. B; # 13 ¶ 3) By stipulation, the issues to be decided by the arbitrator were: "Was the grievant, Suzanne Comeau, discharged for just cause? If not, what shall be the remedy?" (# 1, Exh. B at 2) Approximately four months later on November 15, 2005, the arbitrator issued a Decision and Award in favor of the plaintiff. (# 1, Exh. B)

In his decision, the arbitrator noted that "Comeau is a long-service employee with no prior discipline," in her most recent evaluation she had been rated as "overall satisfactory," and that the defendant had "acknowledge [d] that she was a good employee." (# 1, Exh. B at 7, 11) Bearing in mind Ms. Comeau's decade-long experience with the client in question, the arbitrator faulted Fidelity House for giving "no consideration whatever to her judgment and experience dealing with him." (# 1, Exh. B at 11) Moreover, prior to the termination, the senior investigator for Department of Mental Retardation had determined, at least preliminarily, that " '[t] here is no indication in the circumstances that there was an act or omission on the part of a caretaker that exposed the al-

leged victim to a serious risk of physical or emotional harm.' " [4] (# 1, Exh. B, 11) Further, on the state of the record, conflicts in the evidence with regard to how long the client was left alone in the vehicle were resolved in Ms. Comeau's favor. (# 1, Exh. B at 10)

The arbitrator's award was as follows:

### AWARD

The discharge of Ms. Comeau was not for just cause.

As a remedy, she must be reinstated to her former position and made whole for lost wages and benefits retroactive to January 12, 2005.

I will retain jurisdiction over this case to resolve any dispute that may arise in the implementation of this Award.

Complaint # 1, Exh. B at 12.

In the months following the arbitration, the plaintiff sent a series of letters to the defendant. On December 6, 2005, the Union sent a letter to the defendant detailing Ms. Comeau's back pay mitigation calculations (# 13 ¶ 9) and under cover of letter dated January 23, 2006, Ms. Comeau's 2005 W–2 tax forms were mailed the defendant. (# 13¶ 11) An additional letter was sent on April 5, 2006, inquiring with respect to "the status of Fidelity House's compliance with" the arbitrator's award. (# 13 ¶ 12) Despite these letters, the defendant neither returned Ms. Comeau to her former position nor paid her any back pay. (# 13¶ ¶ 10, 12, 13) In early May, 2006, Fidelity House did however offer Ms. Comeau a different job on a different shift. (# 13¶ 13; # 16¶ 10)

---

**3.** On December 20, 2004, Ms. Comeau allowed one of her clients, a seventy-nine year old man suffering from Down's Syndrome, cataracts and the apparent onset of dementia, to remain in a car in a supermarket parking lot in twelve degree weather for about fifteen minutes while she shopped with her second client. (# 1, Exh. B at 2–5)

**4.** The Department of Mental Retardation is the state agency "formally charged with investigating allegations of abuse." (# 13 ¶ 6)

On May 8, 2006, the Union's attorney submitted a letter to the arbitrator stating:

> Regrettably, even though six months have passed since your award, the Employer [Fidelity House] has failed to make Ms. Comeau whole for her lost wages and benefits. Moreover, the agency is attempting to reinstate Ms. Comeau to an Awake Overnight position in another area rather than her former day shift position as an Individual Services Support Provider at the Haverhill Cooperative Apartments.
>
> Therefore, since you retained jurisdiction in your award, I respectfully request that you contact the parties to assist in resolving this dispute.

Plaintiff's Rule 56.1 Statement of Facts # 13 ¶ 13 and Exh. F.

Nine days later on May 17, 2006, the defendant wrote to the arbitrator, stating:

> As you know, Suzanne Comeau was discharged by Fidelity House for, in the opinion of Fidelity House, jeopardizing the safety of a client. You determined that the discharge was not for just cause and ordered Ms. Comeau to be reinstated. Fidelity House is attempting to reinstate Ms. Comeau, but is not willing to put her in a position where she will be solely responsible for the safety of clients. The only available position in which Ms. Comeau will not be solely responsible for the safety of clients is the Awake Overnight position she was offered. The Awake Overnight position typically pays less than the Individual Services Support Provider position Ms. Comeau formerly held. However, Ms. Comeau will be paid at the higher ISS Provider rate in keeping with your or-der. Fidelity House has the right to transfer employees pursuant to the management rights clause of the Collective Bargaining Agreement and is exercising that right with respect to Ms. Comeau.[5]

Plaintiff's Rule 56.1 Statement of Facts # 13 ¶¶ 13, 14 and Exh. F; Defendant's Local Rule 56.1 Statement # 16 ¶ 10 and Exh. C.

The arbitrator held a conference call with counsel for the parties on June 6, 2006 to address the award issues, the content of which was summarized in a letter from the plaintiff to the arbitrator, cc'd to defendant's counsel, on even date:

> In the conference call you stated, without equivocation, that compliance with your Award required the employer to reinstate Ms. Comeau to her former position as an Individual Support Services direct care worker. Moreover, you stated that you did not find Ms. Comeau to pose any particular threat or danger to the agency's clients, and any claim by the agency to the contrary would run counter to your finding and Award. In addition you stated any attempt by the Agency to first reinstate Ms. Comeau properly and then quickly transfer her because she allegedly posed a threat or danger to the agency's clients would be an end run around your Award.

Plaintiff's Rule 56.1 Statement of Facts # 13 ¶ 16 and Exh. H.

Fidelity House has never interposed any objection to the Union's characterization of the arbitrator's statements made during the June 6th conference call. (# 13 ¶ 17) Fidelity House has never filed an action to challenge or vacate the arbitrator's award. (# 13 ¶ 18) The Union filed the instant ac-

---

5. According to Article 2, the Management Rights provision of the collective bargaining agreement between the parties, "[t]he Agency retains the right to manage the operations of the Agency and direct the working force" which includes the right to "transfer employees" ... "and in general, to determine what work should be performed as well as when, where, how and by whom such work shall be performed." (# 1, Exh. A; # 16 ¶ 11)

tion seeking confirmation of the Arbitration Award pursuant to section 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185, on July 17, 2006.(# 1)

### III. Discussion

#### A. The Merits

The Union has moved for summary judgment on the grounds that Fidelity House failed to challenge the arbitrator's award within the applicable statute of limitations and so the award must be confirmed. Essentially the plaintiff takes the position that the defendant is improperly re-litigating the issue. Fidelity House, on the other hand, contends that the arbitrator exceeded his authority when he blocked Ms. Comeau's proposed transfer, effectively creating an alternate award that is entirely new, not subject to the thirty-day limitation, and one that should be handled through the grievance/arbitration procedure, not the courts.

It has been held that "the limitations period for motions to vacate an arbitration award under section 301 of the LMRA is provided by state law" and, under Massachusetts General Laws chapter 150C 11(b),[6] "a motion to vacate an arbitration award in a case involving a labor dispute must be filed within thirty days after the moving party receives the award." *Intl' Assn' of Bridge, Structural and Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works,*

*Inc.,* 928 F.Supp. 83, 85 (D.Mass.1996) (citing *Derwin v. General Dynamics Corp.,* 719 F.2d 484, 489 (1 Cir., 1983)); *Intl' Assn' of Heat and Frost Insulators and Asbestos Workers, Local Union No. 6 v. Thermo–Guard Corp.,* 880 F.Supp. 42, 47 (D.Mass., 1995). In *Burtman Iron Works,* the Court plainly stated that "[f]ailure to bring a vacatur action within the limitation period extinguishes the right of a party to plead defenses and counterclaims in a confirmation action that could have served to support the vacatur action." *Burtman Iron Works,* 928 F.Supp. at 86 n. 2 (citing *Derwin,* 719 F.2d at 489).

It is perhaps best to note at the outset the issues on which the parties agree. Neither party disputes that the thirty-day limitation period borrowed from the Massachusetts statute applies to any challenges to the arbitrator's award issued on November 15, 2005. The defendant does not claim to have challenged the arbitration award at all. Fidelity House acknowledges that the parties' stipulation gave the arbitrator authority to reinstate Ms. Comeau, and that the arbitrator acted within the scope of his jurisdiction in crafting this remedy.

The point at which the parties diverge is the question of whether the arbitrator issued an alternate award during the conference call when he stated that the defendant could not transfer Ms. Comeau to another position based on the same safety concerns raised at the arbitration. Fideli-

---

**6.** Mass. Gen. L. c. 150C, § 11 states, in pertinent part:

(a) Upon application of a party, the superior court shall vacate an award if:-(1) the award was procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party; (3) the arbitrators exceeded their powers or rendered an award

requiring a person to commit an act or engage in conduct prohibited by state or federal law;

(b) An application under this section shall be made within thirty days after delivery of a copy of the award to the applicant, provided that, if such application is based upon a claim of corruption, fraud or other undue means it shall be made within thirty days after such grounds are known or should have been known.

ty House contends that its objection lies with this "improper" extension of the arbitration award, not with the award itself. Thus, according to the defendant, the thirty-day limitation is a moot point, as it applies only to the "original" arbitration award. Fidelity House takes the position that this new dispute must be sent back through the grievance procedure and arbitration as opposed to being decided by the Court.

■ The First Circuit has held that "unless 'it is beyond argument that there is no material factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion,' the case must go to fresh arbitration rather than to the court for judicial enforcement." *Derwin,* 719 F.2d at 491 (quoting *Boston Shipping Association, Inc. v. International Longshoremen's Ass'n,* 659 F.2d 1, 4 (1 Cir., 1981)). In *Derwin,* a union seeking to confirm an arbitration award sued the employer. The Court of Appeals determined that confirmation was unwarranted because "[t] he union's application for confirmation—unlike the usual complaint seeking confirmation of an arbitrator's award—does not seek resolution of a concrete dispute between the parties." *Derwin,* 719 F.2d at 490.

■ The *Derwin* case is not determinative of the issue at hand. The union in Derwin did not allege that the employer violated the award, nor did it request relief in the form of specific enforcement of the award. *Derwin,* 719 F.2d at 490. Rather, "the union merely [sought] a court order stating that the award . . . is confirmed." *Derwin,* 719 F.2d at 490. In effect the court was not presented with a genuine

dispute to be resolved, but only "asked to put its imprimatur upon an arbitral award in a vacuum." *Derwin,* 719 F.2d at 491. In the present case there is a clear challenge to the arbitrator's award and specific enforcement has been requested. Regardless of how the defendant attempts to frame the issue, the fact remains that Ms. Comeau has yet to be reinstated and she has not been provided with back pay.

Fidelity House has pointed to no material factual differences between the alleged "original" award and the "new" or "alternate" award. Indeed, from all that appears, the defendant advanced the same arguments presented at the arbitration hearing, i.e., whether Ms. Comeau posed a safety risk and whether she was dismissed for just cause. As noted earlier, the arbitrator found Ms. Comeau was not a safety risk and ordered that she be reinstated with back pay. During the conference call, the arbitrator heard these same arguments and repeated his position with respect to Ms. Comeau's reinstatement. The arbitrator's opinion that the defendant's intent to reinstate Ms. Comeau and then immediately transfer her to another position would effectively undermine his award does not constitute an alteration of the original award.[7]

The defendant's protestations notwithstanding, the arbitrator's award only restricts Fidelity House from transferring Ms. Comeau on account of any purported safety risk it perceives that she poses as a result of the events of December 20, 2004 because the arbitrator determined that she was not discharged for just cause. Such an action would, indeed, be an "end-run" around the award. The defendant asserts

7. The defendant's argument that the arbitrator exceeded the scope of his powers rests solely on the contention that there was a "new" award. Since there was only one award, the original one, any challenge to the scope of the arbitrator's authority is time-barred under Mass. Gen. L. c. 150C, § 11(b).

that preventing Ms. Comeau's transfer is tantamount to giving her permanent employment. Fidelity House claims that by forcing it to place Ms. Comeau in the same position, its rights under the collective bargaining agreement to transfer her in the future, assign her any work other than that which she previously performed, or determine with which clients she will work will be nullified.

The assertion that the arbitrator's award impinges on Fidelity House's rights under the collective bargaining agreement is similar to a claim quite recently addressed by the First Circuit. When the plaintiff company "attack[ed] the arbitrator's choice of remedy as inconsistent with the section of the Agreement that reserves to management the right to 'assign [ ] the numbers of employees it considers necessary for any operation or crew,'" the First Circuit wrote that

> Our review of an arbitrator's chosen remedy is also highly deferential, and 'where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.'

*Shank/Balfour Beatty v. International Brotherhood of Electrical Workers Local 99,* 497 F.3d 83, 91–92 (1st Cir.2007) (citation omitted).

As noted earlier, Fidelity House does not challenge either the arbitrator's authority to reinstate Ms. Comeau, or the fact that the arbitrator acted within the scope of his jurisdiction in crafting this remedy.

Further, enforcing Ms. Comeau's reinstatement clearly does not translate into permanent employment. Although the defendant cannot use the events underlying the arbitration as a reason for moving Ms. Comeau to another position, Fidelity House is otherwise free to transfer Ms.

Comeau in accordance with the terms of the bargaining agreement.

The bottom line is that there is only one award at issue in this case, that being the one issued on November 15, 2005. The thirty-day statute of limitation applies and, since Fidelity House did not challenge the award within that period, the award must be upheld.

■ The defendant also advances a non-statutory argument against reinstatement on what is essentially public policy grounds. "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *United Paperworkers Intl' Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The Supreme Court has explained the inquiry to be undertaken in determining whether this "legal exception" is applicable:

> The Court has made clear that any such public policy must be "explicit," "well defined," and "dominant." [*W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983).] It must be "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Ibid.* (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 89 L.Ed. 744 (1945)); accord, *Misco, supra,* at 43, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286. And, of course, the question to be answered is not whether Smith's drug use itself violates public policy, but whether the agreement to reinstate him does so. To put the question more specifically, does a contractual agreement to reinstate

Smith with specified conditions ... run contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests? See *Misco, supra,* at 43, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286.

*Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17,* 531 U.S. 57, 62–63, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000).

▮ Fidelity House has not provided any law supporting its contention that the reinstatement of a human services provider it believes exercised poor judgment in client care is against public policy. Rather, the same argument is reiterated, i.e., that Ms. Comeau presents a safety hazard to their clients. Because the defendant has not proffered a compelling argument and the Court must give deference to the arbitrator's award which specifically rejected the defendant's contentions,[8] the public policy argument must fail.

### B. *Attorneys' Fees*

▮ "When a party refuses to comply with an enforceable arbitration decision without justification the court may award attorney's fees." *Burtman Iron Works,* 928 F.Supp. at 89 n. 8 (citing *Thermo-Guard,* 880 F.Supp. at 48). Further, it is "within the discretion of the court" to award attorney's fees when the losing party chose to litigate "despite the fact that it

was unable to present any rational arguments in support of its position." *Thermo-Guard,* 880 F.Supp. at 48 (quoting *Brigham & Women's Hospital v. Massachusetts Nurses Association,* 684 F.Supp. 1120, 1125 (D.Mass., 1988)). Finally, a federal court "may award fees and costs to the winning party in a section 301 action if the losing party's position was 'frivolous, unreasonable, or without foundation.'" *Local 2322, Intl' Broth. of Elec. Workers v. Verizon New England, Inc.,* 464 F.3d 93, 96 (1st Cir.2006) (finding that employer's argument that arbitrator's clarification of an award was in fact an alteration was at least colorable and not frivolous) (quoting *Local 285, Serv. Employees Intl' Union AFL–CIO v. Nonotuck Resource Assoc., Inc.,* 64 F.3d 735, 737 (1st Cir., 1995)).

▮ Fidelity House relies on the Verizon decision in arguing that the request for attorney's fees should be denied. In Verizon, the language of the altered award was distinctly different from the language of the original award,[9] and the First Circuit found that the question of whether it was an alteration was "reasonably disputable." *Verizon,* 464 F.3d at 100. In the present case, no evidence has not been presented to show that the arbitrator altered the language or meaning of the original award in any way. Fidelity House bases its refusal to reinstate Ms. Comeau on the very grounds previously decided against it at the arbitration. The defen-

---

**8.** The Court "shall uphold an arbitrator's interpretation of a contract as long as we can find some plausible argument that favors his interpretation." *Crafts Precision Industries, Inc. v. Lodge No. 1836,* 889 F.2d 1184, 1185 (1 Cir., 1989) (holding the arbitrator's decision that employer did not have just cause to dismiss an employee was within the bounds of his authority).

**9.** The first award stated: "The one day suspension given to Thomas Ouellette was not

for just cause. The day shall be converted to leave without pay and the discipline removed from his file." In contrast, the clarified award stated: "The one day suspension give[n] to Thomas Ouellette was not for just cause. He shall be made whole for all lost wages and benefits arising from this suspension and the discipline shall be removed from his file. The day of the funeral shall be treated as [a] day of leave without pay." *Verizon,* 464 F.3d at 95–6.

dant did not take the opportunity to challenge the award in a timely fashion and its opposition to the Union's motion for summary judgment is largely made of wholecloth. Lastly, even if Fidelity House thought that its claim with respect to the reinstatement of Ms. Comeau was colorable, it has never disputed the award with respect to back pay and yet, to date, more that a year and a half since the award was issued, the amount due Ms. Comeau has not been paid. In all of these circumstances, the Union is entitled to an award of attorney's fees.

## IV.  Order

For the reasons stated, it is ORDERED that Plaintiff's Motion For Summary Judgment (# 11) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that Defendant's Motion For Summary Judgment (# 14) be, and the same hereby is, DENIED. Judgment shall enter for the plaintiff when the matter of the award of attorney's fees is resolved.

It is FURTHER ORDERED that the plaintiff shall file and serve copies of time records or other materials necessary to support an award of attorney's fees sought in connection with the institution and prosecution of the instant case on or before the close of business on October 17, 2007. The defendant is GRANTED LEAVE to file any objection to the amount of the award of fees sought by the plaintiff on or before the close of business on October 31, 2007.