PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

EAST COAST HOCKEY LEAGUE,
INCORPORATED,

*Plaintiff-Appellee,*

v.

PROFESSIONAL HOCKEY PLAYERS
ASSOCIATION,

*Defendant-Appellant.*

No. 02-1419

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Dennis W. Dohnal, Magistrate Judge.
(CA-01-691)

Argued: January 22, 2003

Decided: March 12, 2003

Before WILLIAMS and MICHAEL, Circuit Judges, and
Morton I. GREENBERG, Senior Circuit Judge of the
United States Court of Appeals for the Third Circuit,
sitting by designation.

Reversed and remanded by published opinion. Senior Judge Green-berg wrote the opinion, in which Judge Williams and Judge Michael joined.

## COUNSEL

**ARGUED:** Ronald Leonard Jaros, Sr., JAROS & JAROS, Hamburg, New York, for Appellant. James H. Falk, Jr., FALK LAW FIRM,

P.L.C., Washington, D.C., for Appellee. **ON BRIEF:** Andrew S. Kasmer, CHASEN & BOSCOLO, Falls Church, Virginia, for Appellant.

## OPINION

GREENBERG, Senior Circuit Judge:

### I.  *INTRODUCTION*

This declaratory judgment matter comes on before this court on the Professional Hockey Player Association's ("Association") appeal from an order entered in the district court on March 21, 2002, granting East Coast Hockey League, Incorporated's ("League") motion for summary judgment and denying that of the Association. This action involves a controversy over whether two disputes between the parties are subject to arbitration under the parties' collective bargaining agreement ("CBA"). A magistrate-judge, acting pursuant to 28 U.S.C. § 636(c)(1), and exercising jurisdiction under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, entered the order after determining that, as contended by the League, resolution of neither dispute is subject to arbitration.

There is no controversy regarding the facts material to the limited issues on this appeal, a circumstance that made this case appropriate for resolution on the parties' motions for summary judgment.[1] The Association is a labor organization that represents hockey players throughout the United States and Canada and the League is a professional hockey league with hockey clubs operating in different states. Article III of the CBA provides that the member clubs "recognize the [Association] as the sole and exclusive collective bargaining representative for all professional hockey Players who are employed by, or loaned to, [League] Clubs. . . ." App. at 20.

---

[1]Indeed the Association as the appellant set forth the facts in its brief and the League in its brief recited that it "is satisfied" with the Association's presentation. Appellee's brief at 4.

Article XII of the CBA contains a grievance and arbitration procedure for resolution of disputes between the parties, providing in pertinent part as follows:

> Any dispute, controversy, claim or disagreements (1) arising out of or relating to this Agreement; (2) arising out of or related to the [League] Standard Player's Contract or any alleged breach thereof; (3) arising out of or relating to any term or condition of a Player's employment; (4) arising out of or related to the [Association]; and/or (5) arising out of or related to a Player and any other [League] Club and/or the [League] shall be submitted to final and binding arbitration . . . .

App. at 36 (footnote omitted).

The CBA incorporates the standard player's contract as an appendix. Paragraph 8 of the contract, which relates to players' fines and suspensions, provides as follows:

> 8.   RULES AND REGULATIONS
>
> > The Club and the Player severally and mutually promise and agree herein to be legally bound by the Governing documents of the League and by all the terms and provisions thereof, a copy of which shall be open and available for inspection by the Club and the Player, at the Main Office of the League and at the Main Office of the Club. The Club and the League each may from time to time during the continuance of this Contract establish rules, regulations, and guidelines governing the conduct and conditioning of the Player, and it is hereby recognized and agreed by the Player that such rules shall form part of this Contract as fully as if herein written. For violation of the Governing documents of the League or any other rules of the League or the Club, the Player may be fined or suspended. When a Player is fined or suspended, the Player shall be given written notice, via the

> Player's Club, stating the amount of the fine and/or the duration of the suspension, and the reason therefore. Any dispute . . . or claim, of any nature, between the Player and any other [League] Club or the League, shall be submitted to final and binding arbitration pursuant to the dispute resolution procedures set forth in the Collective Bargaining Agreement.

App. at 54. Thus, both the CBA and the standard player's contract have broad arbitration provisions.

The two disputes between the Association and the League are the "Tallahassee dispute" and the "Sugden dispute." The Tallahassee dispute concerns the Association's assertion that the Tallahassee Tiger Sharks, a member club of the League, violated the salary cap provision contained in Article VII, Section 1, of the CBA. That provision states in pertinent part as follows:

> B. Amount.

> At no time may a Member Club pay weekly Club Salary of more than:

> * * *

> (b) $9,250 for the 2000/2001 regular and post-season play period[.]

App. at 25.

The Association submitted a League Dispute Resolution Form to the League arising out of the dispute between Tallahassee and its players regarding the salary cap. In particular, the Association, as the bargaining representative of the players on the Tallahassee club, asserted that the Tallahassee club's management violated the salary cap during the 2000/2001 regular hockey season by paying a weekly club salary greater than the CBA permitted.

Independently of the Association's claim that the management of the Tallahassee club violated Article VII of the CBA, the League president, pursuant to its by-laws, imposed a fine on the Tallahassee management and deducted a sufficient number of points from the club in the League standings to prevent Tallahassee from participating in the play-off rounds thereby causing the Tallahassee players to suffer a loss of play-off bonuses. The Association demanded that its claim against Tallahassee arising from the violation of the salary cap be resolved by arbitration as provided in Article XII of the CBA but the League refused to submit the dispute to arbitration.

The Sugden dispute involves Brandon Sugden, a player member of the Association employed under a standard player's contract by the Peoria Riverman, a League club. By reason of Sugden throwing a stick at a patron, the League president suspended him for life thereby permanently precluding him from playing for Peoria or for any other League member club. The Association disputed both the factual basis for the suspension and the appropriateness of its duration. Thus, it demanded that the parties submit the Sugden dispute to arbitration pursuant to Article XII of the CBA. The League, however, refused to do so.

Following its rejection of the Association's arbitration demands, the League brought this action in the district court, contending that neither the Tallahassee dispute nor the Sugden dispute is arbitrable. The Association counterclaimed, requesting the court to compel the League to arbitrate the disputes pursuant to the CBA arbitration provision. As we have indicated, the court resolved the matter on cross-motions for summary judgment and found in the League's favor. The Association then filed this appeal. We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review on this appeal. *See Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir. 1988).

## II.  *DISCUSSION*

We start our discussion of the substantive issues by setting forth the overarching principles applicable on this appeal. To start with, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to sub-

mit." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted). Thus, the terms of the implicated contract determine whether a dispute is arbitrable.[2] *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960). Second, a court should uphold a claim that a dispute is subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (internal quotation marks omitted). Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* at 649.

The magistrate-judge explained his ruling as follows. The CBA provides that the League reserves and retains the right to issue rules and regulations governing the conduct of the Association's members. These rules, regulations and by-laws are within the League's and its clubs' jurisdiction and are not incorporated into the CBA and are not susceptible to arbitration. In both the CBA and the standard player's contract the players are bound by the League's rules, regulations and guidelines governing the players' conduct. The rules provide that the League may fine or suspend a player and the League president

> shall interpret the playing rules, shall impose penalties/fines in accordance with the Regulations, and may impose a penalty/fine upon any Member, or coach or player of a Member's teams, if such Member, or director, officer or employee thereof, has been guilty of conduct prejudicial or detrimental to the League, as the President determines in his sole discretion.

App. at 98. The magistrate-judge concluded from the foregoing provisions that "although there is a valid arbitration clause in the Agreement, the Association unambiguously waived the right to arbitrate League decisions relating to player or member conduct . . . ." App. at 198-99.

---

[2]We are not concerned here with a situation in which the claimed obligation to arbitrate is imposed as a matter of law. *See, e.g.*, 29 U.S.C. § 1401(a).

The magistrate-judge then explained that:

> . . . I find that the Sugden matter clearly involved player misconduct; therefore the decision of the League to sanction Sugden with a lifetime suspension is not susceptible to the binding arbitration clause of the Agreement. Additionally, I find that the Tallahassee matter involved member misconduct as well, even though the salary cap is addressed in the Agreement. Tallahassee admitted to violating the salary cap, there is no question or dispute but that Tallahassee was guilty of member misconduct, and that Tallahassee did not contest the allegation that may have made it subject to arbitration. Because the misconduct is undisputed, the appropriateness of a sanction falls squarely within the power of the League president and is not subject to the terms of the Agreement's binding arbitration clause.

App. at 199.

We reject the magistrate-judge's conclusions. There are three levels of documents involved here: the CBA between the League and the Association; the constitution, by-laws, and rules and regulations that the League adopts; and the standard player's contract. Clearly, a violation of a salary cap is a breach of the CBA and the fact that the League president disciplined the club by reason of it does not make it any less a violation of the CBA. Under the CBA, "[a]ny dispute, controversy, claim or disagreements . . . arising out of or relating to this Agreement [or] arising out of or relating to the [Association] . . . shall be submitted to final and binding arbitration . . . ." App. at 36. We are not concerned here with interference with the president's power to find that the Tallahassee club's actions violated the salary cap and his right to impose sanctions for the violation and the Association does not contend otherwise. Indeed, the Association's claim is based on the consequence of that finding. Therefore the Association in the Tallahassee dispute in no way is challenging the president's exercise of jurisdiction. Thus, the arbitration provision of the CBA must be applied as written and the Tallahassee dispute is subject to arbitration.

The Sugden dispute is somewhat different because the Association does challenge the League president's decision in this matter. More-

over, the League's rules provide that its president shall impose penalties on players guilty of conduct prejudicial or detrimental to the League in his sole discretion and that, after all, is what the president did with respect to Sugden.

Nevertheless, we reach the same result in the Sugden dispute that we do in the Tallahassee dispute. It is essential in considering whether the Sugden dispute is arbitrable to recognize that the Association does not challenge the League's president's power to suspend a player. Accordingly, the fact that the CBA does not incorporate the League's rules pursuant to which the president suspended Sugden is immaterial as the exercise of the power to suspend a player can be made subject to review in an arbitration proceeding by a document separate from the League's rules. Nor is it material that the standard player's contract provides that the rules which give the League president the power to penalize a player form part of the contract as the exercise of that power easily can co-exist with the Association's right to challenge how the president exercises the power. Accordingly, we see no inconsistency in the president being given the "sole discretion" to make a decision and that exercise of discretion being reviewable. In fact, a district court acting solely frequently exercises its discretion but nevertheless a court of appeals ordinarily may review that exercise.

The significant provision in the CBA is that providing that any dispute "arising out of or related to any term or condition of a Player's employment . . . shall be submitted to final and binding arbitration." Moreover, the standard player's contract provides that "[a]ny dispute . . . or claim, of any nature, between the Player and . . . the League, shall be submitted to final and binding arbitration pursuant to the . . . [CBA]." We cannot conceive of what language could be clearer. Furthermore, the League's rules do not provide that the president's exercise of discretion under the rules is exempt from challenge in an arbitration proceeding. The magistrate-judge's conclusion that "the Association unambiguously waived the right to arbitrate League decisions relating to player or member conduct" simply is wrong.

### III.  *CONCLUSION*

Overall, we are satisfied that the president's decision to suspend a player is subject to challenge by the Association through arbitration.

Moreover, the Association may seek a remedy through arbitration for a club's violation of the CBA even though the president has penalized the club for the violation. In view of our conclusions, we hold that the magistrate-judge erred in his decision and that he should have denied the League's motion for summary judgment and, inasmuch as there is no dispute of material fact, he should have granted that of the Association. Consequently, we reverse the order of the district court entered March 21, 2002, and remand the matter to the district court to enter summary judgment for the Association declaring that the disputes are subject to arbitration.

*REVERSED AND REMANDED*