**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2215**

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 23,

            Plaintiff - Appellant,

      v.

MOUNTAINEER PARK, INCORPORATED,

            Defendant - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.   Frederick P. Stamp, Jr., Senior District Judge.  (5:08-cv-00177-FPS)

Argued:  October 28, 2010          Decided:  January 26, 2011

Before MOTZ, AGEE, and WYNN, Circuit Judges.

Reversed and remanded by unpublished opinion.  Judge Agee wrote the opinion, in which Judge Motz and Judge Wynn joined.

**ARGUED:** Marianne Oliver, GILARDI, COOPER & LOMUPO, Pittsburgh, Pennsylvania, for Appellant.   Peter Raymond Rich, SPILMAN, THOMAS & BATTLE, PLLC, Pittsburgh, Pennsylvania, for Appellee. **ON BRIEF:** William J. Gagliardino, GILARDI, COOPER & LOMUPO, Pittsburgh, Pennsylvania; Timothy F. Cogan, CASSIDY, MYERS, COGAN & VOEGELIN, LC, Wheeling, West Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

United Food and Commercial Workers, Local 23 ("the Union") appeals from the district court's grant of summary judgment in favor of Mountaineer Park, Inc. ("MPI"). The Union sought to compel MPI to arbitrate two disputes under the arbitration provision of the Collective Bargaining Agreement ("CBA")[1] between the Union and MPI. In its order granting MPI's motion for summary judgment, the district court held that the disputes were not subject to arbitration. Because we conclude that the parties' agreement requires arbitration, we reverse the judgment of the district court and remand for further proceedings.

I.

The resolution of this case revolves around the scope and interplay of two sections in the CBA: the arbitration provision in Article 12, and the management rights clause in Article 4. Under Article 12, the parties agreed to an expansive provision to arbitrate "any dispute or disagreement with respect to the interpretation or any of the provisions of this agreement." (J.A. 22, 48.)

---

[1] Although there were two different CBAs in effect during the relevant time frame, the pertinent provisions of each are the same for purposes of this case. Accordingly, we simply refer to the CBA.

Article 4, titled "Management Rights" lists certain rights retained by MPI, the pertinent provision for our purposes being the following:

> ARTICLE 4 – Management Rights: Except as expressly modified or restricted by a specific provision of this Agreement, Employer reserves the right in accordance with its judgment in connection with it's [sic] VLT employees:[2]
>
> . . .
>
> (j) Except as otherwise specifically provided herein, to exercise all rights it had prior to the signing of this Agreement.

(J.A. 14-15; 40-41.)

The parties dispute how the foregoing provisions apply to determine whether the two separate grievances brought by the Union are arbitrable.[3] The first grievance (the "pay grievance") was filed by the Union on behalf of several employees who changed job classifications by voluntarily transferring into lower-grade positions. According to the Union, these employees were treated as "new hires" after their transfers and were paid the "hiring rates" set forth in subsection 1 of Appendix A to the CBA, but without any adjustment for prior increases earned under subsection 2.

---

[2] The employees whose grievances are at issue are all VLT employees.

[3] The parties and the district court referred to the disputes as "grievances" and we will use the same term.

3

In the second grievance (the "vacation grievance"), the Union challenged MPI's decision to "blackout" December 26th as a day when no employees were permitted to take vacation, and the consequent denial of employees' requests for vacation on that date.

The Union filed its complaint in the district court to compel arbitration of these grievances after MPI refused to arbitrate. After the parties filed cross-motions for summary judgment, the district court issued an opinion and order granting MPI's motion for summary judgment and denying the Union's. In doing so, the district court held that MPI was not required to arbitrate either grievance.

The Union timely appealed. This Court has jurisdiction under 28 U.S.C. § 1291.

II.

A.

We review a district court's award of summary judgment de novo. French v. Assurance Co. of Am., 448 F.3d 693, 700 (4th Cir. 2006). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c).

In AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986), the Supreme Court described four

4

basic principles which courts should use to determine whether a disputed issue is subject to arbitration.

> The first principle . . . is that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. . . .

> The second rule, which follows inexorably from the first, is that the question of arbitrability-- whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance--is undeniably an issue for judicial determination. . . .

> The third principle … is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the [dispute at issue] is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

> Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

475 U.S. at 648-650 (internal quotations and citations omitted).

Additionally, in cases where there is a broad arbitration clause and an "absence of any express provision excluding a

particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960) ("Warrior & Gulf").

B.

With regard to the pay grievance, the district court found the following language in subsection 4 of Appendix A to be significant: "It is specifically agreed that the hiring rates and annual increases set forth in this Appendix 'A' are minimums, and that the Employer may pay rates and increases in excess of these at its sole discretion." (J.A. 31.) The district court considered the "at its sole discretion" language of "particular importance." (J.A. 87.) The court also stated it read subsection (j) of Article 4, which reserved to MPI "all rights" it had prior to signing the CBA, except as otherwise specifically provided in the CBA, to weigh against arbitration. (J.A. 87.)

Principally based on the "sole discretion" authority and reservation of prior rights, the district court concluded the CBA "taken as a whole, clearly and unambiguously shows that the parties did not intend to take a grievance such as this to arbitration. . . . The language clearly shows that, as a result of the parties' bargaining, there is no right to retain past

6

annual pay increases where an employee voluntarily steps into a lower position." (J.A. 88-89.)  Because MPI was paying the employees who voluntarily downbid into lower classifications at least the minimum hiring rates set forth in Appendix A, the district court concluded the pay grievance was not arbitrable.

We disagree.  The CBA's arbitration provision, Article 12, covers "any dispute or disagreement with respect to the interpretation or any of the provisions of this agreement." (J.A. 22, 48.)  Whether the "minimum hourly hiring rates" in subsection 1 of Appendix A constitute the full wage basis of the downbidding employees, so they have no entitlement under subsection 2, is clearly in dispute.  Unless a specific CBA provision takes this grievance out of the scope of arbitration, then it is up to the arbitrator to decide which pay rate applies.

Significantly, there is no express provision in Article 4 or elsewhere in the CBA that removes the pay grievance from the otherwise legitimate reach of the arbitration clause.  While MPI points repeatedly to the management rights clause as exempting certain disputes from arbitration, that clause and the arbitration clause do not refer to each other.  While the wording of subsection 4 of Appendix A may be relevant to the merits of the pay grievance (e.g., in answering whether the subsection 1 pay rates are inclusive or exclusive of the

7

subsection 2 increases), nothing in subsection 4 speaks to the arbitrability of a dispute about the terms in Appendix A. No provision in the CBA excises pay disputes from the agreement to arbitrate.

Nonetheless, MPI contends we should affirm the denial of arbitrability because it presented "forceful evidence of a purpose to exclude the claim from arbitration." See AT&T Techs., 475 U.S. at 650 (quotations and citation omitted). MPI contends it has shown such "forceful evidence" through: (1) the managements rights clause; (2) the discretion given to MPI in Appendix A to pay any rates over the minimum rates set forth therein; (3) the absence of any specific clause requiring MPI to pay more than the hiring minimums to employees who downbid; and (4) MPI's practice, both before and during the term of the CBA, of paying persons going into a different job classification (such as by demotion, bumping, transfer, downbidding, or other reason) at the hiring rate for that classification.

MPI contends that, taken together, this evidence shows that the parties agreed MPI has sole discretion over the issue of pay to its employees except as otherwise modified by the agreement. Consequently, MPI concludes the recited items constitute the "forceful evidence" necessary to show the parties did not intend this dispute to be arbitrable.

Again, we disagree. Warrior & Gulf, which was the genesis of the "most forceful evidence" language, is instructive here. In that case, the union sought to compel the employer to arbitrate a grievance challenging the employer's decision to contract out work that had previously been performed by its employees. 363 U.S. at 575. The agreement between the parties had a grievance and arbitration provision which governed any "differences aris[ing]" between the company and the union "as to the meaning and application of the provisions of this Agreement" as well as "any local trouble of any kind." Id. at 576 (quotations omitted). It further stated, however, that "matters which are strictly a function of management shall not be subject to arbitration under this section." Id. (quotations omitted).

In light of the no-strike clause present in the agreement, the Supreme Court determined that the language "'strictly a function of management' must be interpreted as referring only to that over which the contract gives management complete control and unfettered discretion." Id. at 584. The Court noted that, had there been a specific exclusion from arbitration of "contracting out" or any collateral agreement making clear that contracting out was not a matter for arbitration, the grievance would not be arbitrable. Id. at 584. But in the absence of such a provision and in the absence of any showing that the parties designed the phrase "strictly a function of management"

9

to encompass any and all forms of contracting out, the Court determined that the dispute was arbitrable. The "exclusion" from arbitration of strictly management functions simply was not sufficiently "forceful evidence" of an intent to exclude the claim from arbitration. Id. at 585.

Although the arbitration clause in Warrior & Gulf was arguably broader than the one at issue here, the management rights clause in that case expressly stated that matters that were strictly a function of management were exempted from arbitration. In the case at bar, by contrast, the management rights clause makes no reference to arbitration, much less any restrictions on arbitration. Indeed, neither the management rights clause nor the arbitration provision (nor any other provision of the CBA) expressly excludes any management decision from the arbitration provision.

Moreover, Article 4 is itself limited by other terms in the Agreement. Put differently, while the CBA has a management rights clause, that clause is subject to the other terms in the agreement, including the requirement to arbitrate grievances. (J.A. 14-15; 40-41) (language in managements rights clause stating that "Except as expressly modified or restricted by a specific provision of this Agreement," management has the expressed rights).

10

Additionally, the mere fact that Appendix A gives the employer "sole discretion" to pay higher wages than the contract rate is not dispositive on the question of arbitrability. Indeed, the very issue raised in the pay grievance is a dispute over what is the contract rate, not what the employer may discretionarily choose to pay beyond that rate. Cf. East Coast Hockey League v. Prof'l Hockey Players Ass'n, 322 F.3d 311 (4th Cir. 2003) (concluding that a dispute was arbitrable despite language in a separate agreement between the parties that management could take certain actions "in its sole discretion"); id. at 316 (this Court finding "no inconsistency in the president being given the 'sole discretion' to make a decision and that exercise of discretion being reviewable" via arbitration).[4]

For all of these reasons, we conclude that the record does not disclose the "most forceful evidence" showing that the

_____

[4] MPI relies heavily on three Seventh Circuit decisions: Local Union 1393 International Brotherhood of Electrical Workers v. Utilities District of Western Indiana Rural Electric Membership Cooperative, 167 F.3d 1181 (7th Cir. 1999), International Brotherhood of Teamsters v. Logistics Support Group, 999 F.2d 227 (7th Cir. 1993), and Local Union No. 483, International Brotherhood of Boilermakers v. Shell Oil Co., 369 F.2d 526, 529 (7th Cir. 1966). These out of circuit cases are not binding on this Court. In any event, we have considered each of them, but all are substantially distinguishable based on the facts and language of the contract provisions, none of which are similar to those in the case at bar.

parties did not intend to arbitrate the pay grievance. Accordingly, the presumption in favor of arbitrability applies and the district court erred in determining the pay grievance was not arbitrable.

C.

Our analysis leads to a similar conclusion on the arbitrability of the vacation grievance. According to the Union, the analysis turns on "the interplay between the employees' rights to take vacation at any time during the year and the employer's right to approve/disapprove selected vacation dates." (Appellant's Br. at 11-12.) The asserted "right" of employees to take vacation at any time during the year, according to the Union, is based on language in the CBA that "[v]acations may be taken between January 1 and December 31 each year." (J.A. 24.) The Union contends that this provision means the employer is prohibited from making any date a "blackout date" on which no employees are permitted to take vacation. The Union therefore argues that the vacation grievance is nothing more than a dispute as to the meaning of the terms of the CBA and thus must fall to an arbitrator to decide.

MPI responds that there is unchallenged 'forceful evidence' of a purpose to exclude the vacation selection grievances from arbitration. In particular, MPI contends Section 14.6 of the CBA is such forceful evidence because it expressly allows MPI to

12

"approve/disapprove selected vacation dates." (Appellee's Br. 22 (quoting J.A. 25, 51).) Additionally, MPI argues the CBA has no specific contractual restriction on MPI's right to disapprove vacation on the day after Christmas, and the Union cannot explain why it negotiated a specific restriction on management's staffing rights with respect to Christmas Day in Section 13.2 of the CBA.

The district court concluded the vacation grievances were not arbitrable, but appeared to do so by analyzing the merits of the claim instead of whether the dispute was subject to arbitration. As noted in AT&T Technologies, "a court is not to rule on the potential merits of the underlying claims." 475 U.S. at 649. MPI contends, though, that the district court properly addressed the merits of the vacation grievance claim, because consideration of the substantive merits is sometimes required in order to rule on arbitrability. While it is occasionally necessary for a court to interpret a provision of an agreement in order to determine arbitrability, see Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 209 (1991) ("we cannot avoid [our duty to determine arbitrability] because it requires us to interpret a provision of a bargaining agreement"), our caselaw consistently follows the Supreme Court's admonition to avoid reaching the merits of the issue when that is not required to determine the question of arbitrability. See, e.g., United

Steel, Paper, & Forestry, Rubber, Mfg., Energy, Allied-Indus. & Serv. Workers Int'l Union v. Cont'l Tire N. Am., Inc., 568 F.3d 158, 165-66 (4th Cir. 2009) (while "courts are permitted some latitude to interpret provisions of a bargaining agreement that impact the underlying merits of the dispute" when necessary to determine arbitrability, "[i]f possible . . . the underlying merits should be avoided"); United Food & Commercial Workers Union v. Shoppers Food Warehouse Corp., 35 F.3d 958, 961 (4th Cir. 1994).

Whether the vacation grievance fails on its merits is immaterial to the determination of whether the grievance is arbitrable. See AT&T Techs., 475 U.S. at 649-50. As with the pay grievance, the conflicting interpretations of Article 14 of the CBA are a "disagreement with respect to the interpretation . . . of the provisions of the agreement." (J.A. 22, 48.) No provision of the CBA takes this dispute out of the presumption of arbitration. Neither do any of MPI's suggestions rise to the level of the "most forceful evidence" to exclude the vacation grievance from arbitration.

MPI argues, however, that the district court properly addressed the merits of the claims because the Union's grievances here are "more than 'frivolous', they are 'so totally devoid of merit as to amount to a 'perversion' of the grievance procedure.'" (Appellee's Br. 10 (quoting Tobacco Workers Int'l

14

Union v. Lorillard Corp., 448 F.2d 949, 954 n.10 (4th Cir. 1971)).) Notably, the quoted language is not a holding of this Court.

Instead, the language in Lorillard appears in a footnote in which a panel of this Court reiterates the principle that a federal court cannot refuse to compel arbitration because it finds a claim to be frivolous. The footnote then goes on to say that "[t]he closest any court has come to stating that the court may refuse to compel arbitration if the grievance is without merit is the recognition of the possibility that a grievant's claim be so totally devoid of merit as to amount to a 'perversion of the grievance procedure.'" Lorillard, 448 F.2d at 954 n.10. (citations omitted) (quoting one Second Circuit and one Fifth Circuit decision). This Court continued: "Even if we were to accept the notion that the District Court may examine the merits to such an extent, this case falls far short of such a test." Id.[5]

We cannot conclude the Union's claim is "more than frivolous." The vacation grievance turns on interpretation of the CBA and the rights of MPI with regard to denying vacation

---

[5] MPI points to no other Supreme Court or Fourth Circuit authority holding that a court may decline to order arbitrability of an otherwise arbitrable grievance because the grievance is determined to be "more than frivolous."

15

days or blacking out vacation days altogether. In short, the presumption of arbitrability applies, and no forceful evidence has been shown that the parties did not intend to arbitrate such a dispute. Thus, the vacation grievance is subject to the parties' agreement to arbitrate, and the district court erred in refusing to order arbitration of that dispute.

III.

The arbitration clause in the CBA reflected the parties' clear intent to arbitrate a broad array of disputes concerning the interpretation of the CBA and MPI has not presented "forceful evidence" that the parties intended to exclude the issues in dispute from the contractual covenant to arbitrate. Accordingly, the judgment of the district court is reversed, and the case is hereby remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED

16